In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-3824

LEE K. WILLIAMS,

*Plaintiff-Appellant,*

*v.*

AETNA LIFE INSURANCE COMPANY and
THE SYSCO CORPORATION GROUP BENEFIT PLAN,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 6228—**Ronald A. Guzman**, *Judge.*

ARGUED SEPTEMBER 28, 2007—DECIDED NOVEMBER 1, 2007

Before POSNER, FLAUM, and SYKES, *Circuit Judges.*

FLAUM, *Circuit Judge.* Plaintiff Lee Williams was a truck driver for the SYSCO corporation from 1994-2002 and a participant in the company's long term disability ("LTD") plan. On July 26, 2002, Williams became ill, and late that year was diagnosed with chronic fatigue syndrome ("CFS"). Williams applied for LTD benefits, but his claim was denied May 12, 2003 for failing to show both a "diagnosable condition" explaining Williams's "subjective symptoms of fatigue," and that Williams was unable to perform his job functions. Williams's treating physician then submitted a CFS residual functional capacity questionnaire and Williams appealed his denial

of benefits. On January 9, 2004, Williams's appeal was denied due to insufficient evidence as to whether Williams was unable to perform his job functions. Williams then brought suit in the Northern District of Illinois. The parties filed cross-motions for summary judgment. The district court granted defendants' motions for summary judgment and denied Williams's motion. This appeal followed. For the following reasons, we affirm the district court's rulings.

## I.  Background

The plaintiff/appellant, Lee Williams, was born in 1959 and worked as a truck driver for the SYSCO corporation from November 1, 1994 until July 26, 2002. Williams's job required that he be able to do the following: occasionally climb ladders, kneel, twist, and stoop; frequently climb stairs, pull, push, reach, grasp, sit, stand, walk, and use fine and gross manipulation; and continuously lift, carry, and bend. Williams also had to be able to lift up to 20 pounds continuously, up to 50 pounds frequently, and up to 100 pounds occasionally.

Williams participated in the SYSCO Corporation Group Benefit Plan ("the Plan"), which included long-term disability ("LTD") benefits to employees. The Plan is maintained by SYSCO, with Aetna Life Insurance ("Aetna") serving as the underwriter and claims administrator for the LTD policy. Aetna is vested with "discretionary authority to: determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of [the] policy." Under the Plan, for purposes of the claim in this case, an employee is disabled and entitled to benefits if: "you are not able to perform the material duties of your own occupation because of: disease or injury; and your work earnings are 80% or less of your adjusted predisability earnings."

Williams became sick on July 26, 2002 and complained of fatigue, shortness of breath, dizziness, and cough. These symptoms continued after Williams was released from the hospital. Williams subsequently underwent a number of different tests to determine what was causing his fatigue and weakness. In early 2003, after ruling out other conditions that could be responsible for Williams's chronic fatigue, Dr. John Sorin, a specialist in immunology and CFS at Northwestern Hospital, diagnosed Williams with CFS.

## A. Williams's Application for LTD Benefits

In February 2003, Williams applied for LTD benefits under the Plan. In March 2003, SYSCO sent Aetna a physical demand analysis, which detailed Williams's job requirements. In addition to Williams's application, Dr. Sorin submitted an Attending Physician Statement ("APS") explaining that Williams had been diagnosed with CFS. This APS also expressed that Williams was unable to perform his regular occupation, stating that Williams had a "Class 5" physical impairment, meaning he was unable to perform even minimal sedentary activity and was severely limited in his functional capacity.

Aetna referred Williams's application to Dr. Brent Burton, who was asked to review the file and comment on reasonable limitations and restrictions for Williams. On May 5, 2003, Dr. Burton submitted a report to Aetna, which stated in part:

> [T]he medical data in this case do not provide any documentation that Mr. Williams has a diagnosable medical condition that explains his subjective symptom of fatigue. The physical examination data do not reveal evidence of significant loss of range of motion, strength, sensation, coordination, etc., to justify

discontinuation of workplace activities. There are no data to indicate that Mr. Williams has sufficient impairment to render him unable to work in his usual occupation as a truck driver.

On May 12, 2003, Aetna long-term disability analyst Kaz Takashima denied Williams's claim for disability in a letter erroneously dated April 25, 2003. The letter summarized Williams's medical records and echoed nearly word-for-word Dr. Burton's reasoning quoted above for denying benefits to Williams.

## B. Williams's Appeal

After Aetna denied Williams LTD benefits, Dr. Sorin wrote a note to Aetna on May 19, 2003 clarifying that Williams was under his care for CFS and that, although Williams was showing signs of recovery, he was still unable to resume his employment. On August 11, 2003, Dr. Sorin completed a CFS residual functional capacity questionnaire regarding Williams's diagnosis and functional limitations. On this form, Dr. Sorin diagnosed Williams with CFS, but did not fully answer all the answers with respect to Williams's functional limitations.

On this questionnaire, Dr. Sorin did mark boxes reflecting that Williams's fatigue constantly interfered with his attention and concentration; that Williams could occasionally twist, stoop, crouch, and climb; and that Williams would have both "good days" and "bad days," leading him to miss more than four day of work each month. Other parts of the questionnaire however, were not fully completed. For example, Dr. Sorin marked that Williams was only capable of low stress jobs, but left blank the section asking for an explanation for this conclusion. In another section, Dr. Sorin wrote that Williams could walk one to two city blocks without rest,

marked that Williams could only stand or walk less than two hours a day, and checked that Williams needed a job where he could shift positions at will. In this same section however, Dr. Sorin did not fill out how many hours or minutes Williams could sit or stand at one time, and instead wrote in the margin that this was "unknown." With respect to lifting, Dr. Sorin marked that Williams could occasionally lift less than ten pounds, but failed to fill out the form with respect to the higher weight amounts listed. Finally, Dr. Sorin marked that Williams had significant limitations doing repetitive reaching, handling, or fingering, but in the section where the form asked the percentage of time during a working day that the patient can perform these activities, Dr. Sorin wrote "untested" in the margin.

On September 10, 2003, Williams, operating through counsel, appealed Aetna's denial of his claim. On January 9, 2004, Aetna issued a letter to Williams upholding its denial. The letter stated that, while Aetna had reviewed the information submitted on appeal, this information failed to document that Williams was physically impaired from working as a truck driver. The denial letter then specifically cited several of the items left incomplete on Dr. Sorin's questionnaire. The letter concluded:

> Although Dr. Sorin diagnosed Mr. Williams with chronic fatigue syndrome, the functional impairment you assert prevents Mr. Williams from working in his own occupation is not apparent. There is no record that Mr. Williams' functional capacity was tested to accurately determine his limitations and restrictions. As Dr. Sorin stated in his report Mr. Williams was not tested for many of the functions he claims he is unable to perform such as lifting, sitting and standing. Without such evidence, we are unable to reverse our decision and Mr. Williams [sic] will remain closed.

Following this denial, Williams sent Aetna a letter on July 28, 2004, requesting a copy of his claim file and notifying Aetna that he had been deemed disabled by the Social Security Administration.

## C. Procedural History

Williams then brought this suit against Aetna and the Plan under § 1132(a)(1)(B) of ERISA, claiming he was wrongfully denied long-term disability benefits. On September 28, 2003, the district court ruled on four motions brought by the parties. Williams only appeals two of these rulings. Williams does not challenge the district court's denial of Williams's motion to strike Takashima's affidavits, which verified that Aetna's initial denial letter was erroneously dated April 25, 2003 and was in fact mailed on May 12, 2003. He also does not contest the district court's grant of summary judgment for Aetna on the basis that it was not a proper party to the lawsuit.[1] Williams does however, appeal the district court's denial of summary judgment on his claims and grant of summary judgment for the Plan. For the following reasons, we affirm the district court's decision.

---

[1] Williams has continued to name Aetna as a party to the lawsuit along with the SYSCO Benefit Plan, but has not addressed this issue at all in his appeal on summary judgment and continually refers to the "defendant" in the singular in his briefs. Any claim regarding this issue is therefore waived. *See Heft v. Moore*, 351 F.3d 278, 285 (7th Cir. 2003) ("[t]he failure to cite cases in support of an argument waives the issue on appeal").

## II. Discussion

### A. Standard of Review

This court reviews a district court's decision on summary judgment *de novo. Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 574 (7th Cir. 2006) (citations omitted). "Summary judgment is proper when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004) (quoting Fed. R. Civ. P. 56(c)). "With cross-motions, our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made." *Id.* (quotations and citations omitted).

With respect to this court's review of the Plan's denial of LTD benefits to Williams, the Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115 (1989). Here, because the Plan's administrator does have discretionary authority, the court reviews Williams's denial of benefits under the arbitrary and capricious standard. *See Hackett v. Xerox Corp. Long-Term Disab. Income,* 315 F.3d 771, 773 (7th Cir. 2003) ("Where the plan does grant discretionary authority to the administrator, the court reviews the decision under the arbitrary and capricious standard.")

Under this highly deferential arbitrary and capricious standard, "the administrator's decision will only be overturned if it is 'downright unreasonable.'" *Tegtmeier*, 390 F.3d at 1045 (quoting *Carr v. Gates Health Care Plan*,

195 F.3d 292, 295 (7th Cir. 1999)). Despite the deferential nature of this standard however, it "is not a rubber stamp" and a denial of benefits will not be upheld "when there is an absence of reasoning in the record to support it." *Hackett*, 315 F.3d at 773. Therefore, this court will uphold the Plan's determination "as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005) (quoting *Houston v. Provident Life & Accident Ins. Co.*, 390 F.3d 990, 995 (7th Cir. 2004)).

## B.  Objective Evidence of Functional Incapacity

Chronic fatigue syndrome, like fibromyalgia, poses unique issues for plan administrators, since for both conditions, "[i]ts cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 916 (7th Cir. 2003); *McPhaul v. Board of Commissioners of Madison County,* 226 F.3d 558, 562 (7th Cir. 2000). The Plan in this case initially denied Williams's application for LTD benefits on two grounds: (1) that Williams's fatigue had not been explained by a diagnosable medical condition, and (2) that Williams had not provided any objective evidence that he was functionally impaired from continuing to work as a truck driver. On appeal, the administrator acknowledged that Williams had been diagnosed with CFS, but determined that the questionnaire completed by Dr. Sorin did not reflect that Williams's functional capacity had been accurately tested. Williams argues that because

fatigue is inherently subjective, Aetna acted improperly when it denied Williams's claim on the basis of a lack of objective support in the record.

This court has expressed concern over the distinction between subjective and objective evidence of symptoms such as pain and fatigue. *See Hawkins*, 326 F.3d at 919 ("But the gravest problem with the [medical consultant's] report is the weight he places on the difference between subjective and objective evidence of pain."); *see also Diaz v. Prudential Ins. Co. of America*, No. 06-3822, 2007 WL 2389773, at *5 (7th Cir. Aug. 23, 2007) (discussing the relevance of the claimant's "subjective assessment of his pain"). The court squarely addressed this issue with respect to fibromyalgia in *Hawkins*. There, the court found a plan had acted arbitrarily and capriciously largely because it based its denial of benefits on its medical consultant's belief that a claimant could never be found to be disabled due to fibromyalgia because the amount of pain an individual experiences is subjective in nature. *Hawkins*, 326 F.3d at 919.

Therefore, under *Hawkins*, the Plan could not deny Williams's application for benefits solely on the basis that fatigue is subjective. As the district court correctly determined, it was thus improper for the Plan to initially deny benefits to Williams on the basis that his subjective symptoms of fatigue did not lend themselves to medical diagnosis. *Williams v. Aetna Life Insurance Co.*, No. 04 C 6228, 2006 WL 2794969, at *6 (N.D. Ill. Sept. 28, 2006). A distinction exists however, between the amount of fatigue or pain an individual experiences, which as *Hawkins* notes is entirely subjective, and how much an individual's degree of pain or fatigue limits his functional capabilities, which can be objectively measured. Other circuits have drawn this same distinction. *See Boardman v. Prudential Insurance Co. of America*, 337 F.3d 9, 16 n.5 (1st Cir. 2003) ("While the diagnoses of

chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis."); *see also Denmark v. Liberty Life Assur. Co.*, 481 F.3d 16, 37 (1st Cir. 2007) (following the distinction drawn in *Boardman*); *see also Pralutsky v. Metro. Life Ins. Co.*, 435 F.3d 833 (8th Cir. 2006) (holding it was not unreasonable for a plan to request objective and clinical evidence for a claimant diagnosed with fibromyalgia beyond doctor statements repeating the claimant's subjective complaints of pain and fatigue).

Because Williams's functional limitations due to his fatigue could be objectively measured, the Plan did not act arbitrarily and capriciously in denying Williams's initial application or appeal on the basis that the record lacked accurate documentation in this regard. The administrator clearly explained this concern in both its denial letters to Williams. Williams's initial application included an Attending Physician's Statement where Dr. Sorin remarked that Williams was "severely limited by fatigue," but as Dr. Burton and the administrator noted, the record lacked any specific data reflecting Williams's functional impairment. The residual functional capacity questionnaire submitted to the Plan on appeal could have provided sufficient evidence that Williams's functional abilities were limited by his subjective symptoms of fatigue, but this form was not accurately completed by Dr. Sorin. Despite the fact that the questionnaire asked for responses, Dr. Sorin did not explain his conclusion that Williams was only capable of low stress jobs or measure Williams's ability to lift anything weighing ten pounds or more. Even more troubling is that the sections Dr. Sorin marked "unknown" and "untested" call into question the accuracy of other assessments that he did make. For example, if it was "unknown" how many minutes or hours

Williams could stand at one time before needing to sit down, it is unclear how Dr. Sorin reached the conclusion that Williams could only stand or walk less than two hours total in an eight hour working day. Similarly, it is uncertain how Dr. Sorin determined Williams was significantly limited in doing repetitive reaching, handling, or fingering, when he wrote "untested" next to the boxes asking for the percentage of time in an eight hour work day Williams could perform each of these activities.

Williams argues that regardless of the questionnaire, the Plan's decision was still arbitrary and capricious, since Aetna guidelines require that a reviewer "[c]onsider subjective complaints of the claimant as well as objective evidence." Considering such subjective complaints however, does not mean that they are to be dispositive of a claimant's entitlement to benefits. This distinguishes this case from *Diaz*, in which the plan provided that it would pay benefits for up to 24 months with respect to disabilities "primarily based on self-reported symptoms." *Diaz*, 2007 WL 2389773, at *5. Furthermore, the corresponding example provided in Aetna's guidelines supports the distinction drawn in this case. The example Aetna provides is that a reviewer should consider the claimant's subjective complaints when "[a] disability claimant genuinely appears to be in pain, although there are no objective medical findings." This example echoes the thrust of *Hawkins*—that the amount of pain or fatigue an individual experiences is inherently subjective in nature. The example given by Aetna however, does not bar reviewers from requiring accurate documentation from a treating physician that the claimant's subjective symptoms of pain or fatigue limit his functional abilities in the workplace. Therefore, the Plan's denial of benefits to Williams on the basis of Dr. Sorin's failure to provide accurate information detailing how Williams's

fatigue limited his functional abilities was not arbitrary and capricious.[2]

## C. Full and Fair Review

Williams's next claim is that the Plan administrator denied him a "full and fair review" as required by ERISA.[3] In order for a plan to have "substantially complied" with the requirement that a claimant receive a full and fair review, "the administrator must weigh the evidence for

---

[2] Williams also argues that the Plan's decision did not correspond with the Social Security Administration's ("SSA") guidelines regarding CFS. Evaluating Cases Involving Chronic Fatigue Syndrome, Social Security Administration Policy Interpretation Ruling, SSR No. 99-2p, 1999 SSR LEXIS 3 (Apr. 30, 1999). This argument however, only relates to the Plan's initial denial challenging the CFS diagnosis. The district court already found that the Plan erred in denying the claim on that ground, and that decision therefore is not at issue on this appeal. Furthermore, the fact that the SSA granted Williams disability benefits has little bearing on the Plan's decision. Although courts may treat SSA determinations as relevant, there is no indication that the Plan included SSA disability as a condition for disability under the Plan, and regardless, Williams did not inform the Plan of the SSA's decision until after the appeal had already been decided. *See Mote v. Aetna Life Ins. Co.*, No. 06-4127, 2007 WL 2609431, at *6 (7th Cir. Sept. 12, 2007).

[3] In his appellate brief, Williams raises three arguments related to whether he received a "full and fair review." Two of these claims however, were not raised by Williams in his motion for summary judgment and are therefore waived. *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). Thus, this court does not address Williams's claims that Dr. Burton lacked the requisite professional expertise with respect to CFS or that the appeal involved a "medical judgment" requiring the Plan to consult a health care professional per 29 C.F.R. § 2560.503-1(h)(3)(iii) (2003).

and against [the denial or termination of benefits], and within reasonable limits, the reasons for rejecting evidence must be articulated if there is to be meaningful appellate review." *Hackett*, 315 F.3d at 775 (quoting *Halpin v. W.W. Grainger*, 962 F.2d 685, 695 (7th Cir. 1992).

Williams claims that, because Dr. Burton's opinion letter is virtually identical to the conclusion in the denial letter sent out by the administrator, it is clear that the administrator did not "weigh the evidence," but merely adopted Williams's report. Although it is preferable that plan administrators' conclusions not recite verbatim the medical consultant's opinion, doing so does not lead to a *per se* conclusion that a claimant did not receive a full and fair review. In this case, it is undisputed that Takashima provided her own summary of Williams's medical records, which reflects that she did not rely solely upon the medical consultant's report in reaching her decision.

Furthermore, the situation here, where a plan administrator adopts a consulting physician's reasoning, is distinct from *Hackett*, where the plan administrator adopted a medical consultant's conclusion without any accompanying justification for that decision. In *Hackett*, the plan terminated a claimant's benefits on the basis of a consulting physician's conclusion that ran contrary to numerous prior opinions. The consulting physician provided no reason for his departure from previous doctors' opinions and the plan similarly provided no explanation for valuing the consulting physician's opinion over those of prior doctors. *Hackett*, 315 F.3d at 775. As the court explained, the plan easily could have rectified this situation so as to have provided a full and fair review. The court opined that, so long as the medical consultant provided a non-arbitrary explanation for his conclusion and the administrator then considered these factors, the requirements for a full and fair review would be met. *Id.*

That is what occurred here. Dr. Burton's statement that Williams had failed to provide evidence of his functional limitations was a non-arbitrary explanation for his conclusion. The plan administrator then adopted Dr. Burton's reasoning after performing her own review of Williams's medical history. On the basis of these facts, Williams received a full and fair review of his record.

### D.  Dr. Sorin's and Dr. Burton's Medical Reports

Williams's final argument revolves around Dr. Sorin's and Dr. Burton's respective medical reports. Williams claims that Aetna violated its own internal procedures in reviewing these findings and also placed improper value on Dr. Burton's report. These arguments however, are unavailing.

Williams first claims that Aetna improperly refused to credit Dr. Sorin's findings. For the reasons discussed above, it was not improper for Aetna to determine that Dr. Sorin had failed to provide sufficient objective support with respect to Williams's functional limitations. Williams further argues however, that Aetna ran afoul of its own claim procedures, because the reviewer did not request an independent medical examination or a functional capacity evaluation, which reviewers are permitted to do when they are unsure of what the medical information means. This internal procedure however, relates to "Test Change Review," which applies when a claimant has already been awarded benefits. Therefore, this procedure appears to be inapplicable to Williams's situation. Regardless, even if this provision did apply here, Aetna did not run afoul of its requirements. There is no indication that there was uncertainty with respect to the medical information, rather there was simply a lack of objective support regarding Williams's functional abilities. Furthermore, reviewers are not required to follow this

procedure. Instead, it is merely one option at their disposal.

The other internal procedure Williams claims Aetna violated is its requirement that a reviewer obtain additional medical information if the attending physician's and independent medical consultant's reports disagree. The only area where these two reports disagreed however, was with respect to Williams's CFS diagnosis, which was not the sole basis for the initial denial and was conceded by Aetna on appeal. With respect to Williams's functional impairment, there was no disagreement between the reports. Rather, Dr. Burton's report merely pointed out that Dr. Sorin had failed to provide measurable data with respect to Williams's functional limitations.

Williams also claims that, because Dr. Burton is the Plan's medical consultant, his opinion is inherently biased and therefore should be given less weight than Dr. Sorin's findings. The Supreme Court addressed this issue in *Black & Decker Disability Plan v. Nord*, and while the Court did not question lower courts' concerns regarding medical consultants' incentives, the Court expressly held that "plan administrators are not obliged to accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 832 (2003); *see Davis v. Unum Life Ins. Co.*, 444 F.3d 569, 575 (7th Cir. 2006) (refusing to credit a theoretical argument that in-house doctors have an inherent conflict of interest in ERISA cases). Therefore, this argument fails.

Finally, Williams contends that Dr. Burton's opinion was not reliable, and therefore could not serve as a proper basis for denying Williams's claim. Dr. Burton's report however, was not the basis for denying the claim. Instead, the decision was based upon Dr. Sorin's failure to show that he had accurately assessed how Williams's fatigue limited his functional abilities. Furthermore, the holding

of the case Williams cites in support of his position, that an *examining* physician's report may constitute substantial evidence in a disability hearing, *Richardson v. Perales*, 402 U.S. 389, 402 (1971) (emphasis added), does not require the negative inference Williams asks this court to find. In addition, *Richardson* involved the receipt of benefits under the Social Security Act, the requirements of which do not always mirror those under ERISA. *See Black & Decker Disability Plan*, 538 U.S. at 832-33 ("[C]ritical differences between the Social Security disability program and ERISA benefit plans caution against importing a treating physician rule from the former area into the latter."). This claim therefore, is also unavailing.

## III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's ruling granting summary judgment in the Plan's favor and denying summary judgment for Williams. It is therefore unnecessary for us to address Williams's claims regarding fees and benefits.

A true Copy:

        Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*