In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 13-2037

TONY CERENTANO,

*Plaintiff-Appellant,*

*v.*

UMWA HEALTH AND RETIREMENT FUNDS,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:12-cv-00153 — **Michael J. Reagan**, *Judge*.

_____

ARGUED NOVEMBER 6, 2013 — DECIDED NOVEMBER 22, 2013

_____

Before WOOD, *Chief Judge,* and FLAUM and TINDER, *Circuit Judges*.

FLAUM, *Circuit Judge*. From 1978 to 2000, Tony Cerentano worked as a coal miner. He was injured in fifteen mining incidents and received six separate awards of permanent partial disability, but he was able to return to work after each injury. In 2005, Cerentano's car was rear-ended, resulting in more injuries. After this accident, Cerentano sought and was awarded Social Security disability benefits.

He then applied for disability pension benefits under the United Mine Workers of America 1974 Pension Trust Plan. The plan's trustees denied Cerentano's application for benefits, concluding there was no causal link between his mine injuries and the award of Social Security benefits. Cerentano then filed suit, challenging the trustees' decision pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1332(a)(1)(b). The district court granted summary judgment to the defendant plan. We reverse and remand to the plan's trustees.

## I. Background

This case has three relevant periods: (1) 1978–2000; (2) 2001–2004; and (3) 2005 and after. Cerentano worked in the mines in the first period, worked out of the mines in the second period, and did not work in the third period.

### A. Injuries in the coal mines, 1978–2000

From 1978 until 2000, Cerentano worked for Monterey Coal Company and was involved in various accidents on the job, resulting in injuries to his elbow, knee, back, neck, and shoulders. The relevant accidents include (but are not necessarily limited to) the following.

On January 29, 1986, Cerentano sprained the right side of his back while lifting a shovelful of slate. He missed work for ten days. He received temporary total disability benefits and a 1.25 percent permanent partial disability award.

On May 23, 1989, Cerentano injured his left elbow while he was throwing a rock dust bag. He ultimately missed 247 days of work, including having surgery to repair a ruptured biceps tendon. He received a 20 percent permanent partial disability award. He later reinjured that elbow at work.

On February 10, 1994, Cerentano sprained his left knee when he slipped while pulling loose cable. Despite popping and occasional pain in his knee, he did not miss work after this injury. However, on June 3, 1994, he twisted this knee when he stepped on a piece of coal while stepping off a ladder. After an MRI, Cerentano had surgery to repair a meniscal tear and reconstruct the anterior cruciate ligament ("ACL"). Seven months later, he returned to work without restriction. He received a 35 percent permanent disability award for his left leg.

On February 27, 1999, Cerentano slipped and fell when he caught his foot on the lip of a coal-hauling cart, straining a muscle in his back. A follow-up examination found no neurological deficits, and an MRI of his spine was negative for disc herniation and did not suggest a compression fracture. Cerentano missed 88 days of work before returning. He received temporary total disability benefits and a five percent permanent partial disability award.[1]

On July 27, 2000, Cerentano inhaled fumes when he opened the lid on a battery compartment in a coal car that he had been operating. After complaining of chest tightness and dizziness, he was given oxygen and sent home. The next day, he returned to work, but power was interrupted in the mine. During the subsequent evacuation of the mine, he fell ill, became light headed, and fell out of a moving cart. He was taken to the hospital because of pain in his shoulders,

---

[1] In May 2000, Cerentano's family doctor (Dr. Cantrell) also began treating him for dysthymia, a mood disorder whose symptoms are longer-lasting but less severe than depression. She prescribed antidepressants.

left ankle, and left knee. Various x-rays were negative, but he was diagnosed with an injury to his left medial meniscus. After an MRI, a doctor surgically repaired this knee, and also found that the ACL was lax but not torn. In the aftermath of the accident, another doctor examined Cerentano for neck and back pain. He diagnosed contusions of the cervical, dorsal, and lumbar spines with a possible tear in the cervical area and degenerative changes in one location. He recommended weight loss, but no orthopedic treatment. Another physician, Dr. Dusek, treated Cerentano for pain in both shoulders, and performed an arthroscopy of the right shoulder. Cerentano recovered full range of motion.

Cerentano received workers' compensation benefits for the July 28th accident, and was awarded an additional 20 percent permanent partial disability for his left leg and 28.7 percent for his right arm. His shoulder pain continued, so he had more testing. An MRI suggested a partial tendon tear in the right shoulder but was negative for the left shoulder.

### B. Events from 2001–2004

Although he was ultimately released to return to work without restriction, Cerentano last worked in the mines on July 28, 2000, because he was wrongfully discharged after a false positive drug test. A few months later, Dr. Cantrell diagnosed Cerentano with depression due to his firing and prescribed antidepressants. Based on various symptoms, a psychologist also diagnosed and treated Cerentano for dysthymia and anxiety. Ultimately, Cerentano found work as a real estate agent and a recreational vehicle transporter.

### C. Car accident and aftermath, 2005 and after

On February 16, 2005, Cerentano interviewed for a job as a laborer in a warehouse. On his way back from the (successful) interview, his car was rear-ended. Dr. Cantrell diagnosed Cerentano with cervicalgia (neck pain) and lumbar pain. X-rays showed a loss of normal cervical curvature and mild scoliosis with mild disc space narrowing in his lumbar spine. One month later, an MRI showed slight disc bulging with an annular tear. Cerentano soon returned to Dr. Cantrell complaining of left knee pain. X-rays revealed a small fracture, which was attributed to the car accident.

Dr. Scherer evaluated Cerentano's left knee for popping and crunching. He noted Cerentano's prior ACL surgery and said that Cerentano "did not have pain in his knee before the accident." Dr. Scherer's impression was a knee injury from the car accident, either from a blow to the dashboard or a violent contraction of the quadriceps. Cerentano requested permission to start his new job; the doctor said that it might be problematic but that Cerentano could work if he felt well enough to do so.

In September 2005, Dr. Cantrell diagnosed Cerentano with diabetes, left arm neuropathy, lumbar pain with radiculopathy, depression, and left knee pain. In December 2005, Dr. Gornet examined Cerentano for headaches with neck pain, pain between the shoulder blades, pain into his left arm, occasional pain in his right arm, back pain, and left leg pain. Dr. Gornet said that the problems were attributable to the car accident on February 16, 2005.

Dr. Miller examined Cerentano in 2006 for left shoulder pain, and noted that the pain began with the 2005 car

accident. After an MRI showed inflammatory changes in the left rotator cuff, Dr. Miller diagnosed rotator cuff tendonitis and acromioclavicular (shoulder-clavicle) degenerative joint disease. He later injected Cerentano with cortisone, but the results were disappointing. Dr. Miller's impression was that the pain actually emanated from Cerentano's neck. Cerentano continued having neck and back pain thereafter.

After the car accident, Cerentano applied for Social Security Disability Insurance (SSDI) benefits. He sought benefits beginning on February 16, 2005, the date of the car accident. In a February 2008 opinion, an Administrative Law Judge (ALJ) in the Social Security Administration (SSA) applied the SSA's five-step sequential test. *See* 20 C.F.R. § 404.1520(a). The steps ask whether the claimant (Cerentano) is engaged in substantial gainful activity; whether he has a severe impairment (or a combination of severe impairments); whether he is automatically disabled because his severe impairment is referenced in 20 C.F.R. § 404.1520(d); if not, whether he can perform his past work given his "residual functioning capacity," which is based on all of his impairments (not just his severe ones); and if he cannot do his past work, whether he can do any other work, given his residual functioning capacity, age, education, and work experience. *See* 20 C.F.R. § 404.1520. Thus, under this test, an individual can be found disabled either under 20 C.F.R. § 404.1520(d), or because he cannot do any work.

Applying this test, the ALJ found that Cerentano could not do any work, and therefore was disabled and entitled to benefits. Specifically, Cerentano was not employed, and he had nine severe impairments: "asthma, diabetes mellitus, morbid obesity, degenerative disc disease of the lumbar and

cervical spine, status post cervical fusion, degenerative joint disease of the acromioclavicular joint, rotator cuff tendonitis, depression, and anxiety." Despite these impairments, he could not be found disabled under 20 C.F.R. § 404.1520(d). However, he could not perform his past work because of his residual functioning capacity, which was limited due to asthma; diabetes; obesity; back and neck pain due to his 2005 car accident; degenerative disc disease of the lumbar, thoracic, and cervical spine; degenerative joint disease of the acromioclavicular joint; rotator cuff/subacromial bursitis; chronic back strain; "flexion contracture of the left elbow"; "internal derangement of the left knee"; anxiety, depression, and mood swings; severe headaches and pain running down the neck into the arms and hands; and "knee pain attributable to a prior knee injury." The ALJ then found that there were no jobs that Cerentano could perform given his age, education, work experience, and residual functioning capacity. The ALJ therefore found Cerentano disabled as of February 16, 2005.

Cerentano then applied for disability pension benefits from the United Mine Workers of America 1974 Pension Trust Plan ("the Plan"). The Plan trustees denied both his application for benefits and his appeal. Cerentano then filed suit in federal district court, challenging the trustees' determination. The parties stipulated to a remand to the trustees to take another look, including analyzing additional documentation. The trustees then issued another denial.

In the district court, both parties moved for summary judgment, and the Plan's motion was granted. The district court first determined that arbitrary and capricious review applied, because the Plan gives the trustees full discretion to

determine eligibility for benefits. The district court then noted that the trustees had reviewed Cerentano's file three times and concluded that "none of his mine accidents alone or in combination substantially contributed to his total disability." The court found this determination reasonable.

## II. Discussion

We review a district court's grant of summary judgment de novo. *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010). "Judicial review of an ERISA administrator's benefits determination is de novo unless the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). When, as here, the trustees possess such discretionary authority, we ask only whether their decision was arbitrary and capricious. *Tompkins v. Cent. Laborers' Pension Fund*, 712 F.3d 995, 999 (7th Cir. 2013). Under arbitrary and capricious review, we will uphold the trustees' decision "as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Id.* at 999 (citation omitted). Although our review is highly deferential, it "is not a rubber stamp." *Holmstrom*, 615 F.3d at 766. We will not uphold a denial of benefits "when there is an absence of reasoning in the record to support it." *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 321 (7th Cir. 2007) (citation omitted).

In this case, the Plan's text states that a participant who "becomes totally disabled as a result of a mine accident …

shall … be eligible for a pension while so disabled. A Participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance benefits … ." The phrases "as a result of" and "by reason of" do not establish how closely connected the mine accident(s) must be to the disability. When a plan's language is "ambiguous," the trustees' "interpretation … is entitled to deference." *Tompkins*, 712 F.3d at 1002. The trustees provide an interpretation here, stating in their denial that Cerentano's SSDI benefits were not "causally related" to his mine injuries, and that he did not establish "a causal link" between his mine accidents and his award of SSDI benefits. Moreover, "[t]he Trustees recognize that a combination of injuries can cause a disability under the Plan." At oral argument, counsel for the trustees reiterated that a combination of injuries from mine accidents and non-mine accidents can suffice. Thus, under the trustees' interpretation, the crucial question is whether there is "a causal link" between Cerentano's injuries from mine accidents and the ALJ's decision to award benefits.

The trustees' denial decision does not directly address this key question, however. Instead, it incorrectly states that the ALJ awarded benefits "based on" Cerentano's nine *severe* impairments. The trustees' denial addresses each of these severe impairments, concluding that none resulted from a mine accident. The denial also determined that none of Cerentano's many accidents, from 1978–2000, was *itself* a disabling injury. After all, he returned to work after each injury, the denial notes. At this point, the analysis ends.

Even under arbitrary and capricious review, this analysis is insufficient. By their own interpretation, the trustees needed to assess whether Cerentano's mine injuries were "a causal link" in the ALJ's decision to award benefits. There are two ways that an individual can be awarded SSDI benefits: the first relies only on severe impairments, while the second considers all impairments. Cerentano was deemed disabled through this second path, after the ALJ considered non-severe injuries, several of which are or may be from mine accidents (for instance, "flexion contracture of the left elbow," "internal derangement of the left knee," and "knee pain attributable to a prior knee injury"). Non-mine-related injuries certainly contributed to Cerentano's disability, but the Plan states that it is appropriate to award benefits in certain cases based on a combination of injuries, only some of which were caused by mine accidents. On that sensible interpretation, Cerentano's elbow (and perhaps several other) injuries could comprise "a causal link" in the ALJ's decision.[2] Thus, it was insufficient for the trustees to conclude that each individual injury was not *itself* totally disabling, because that is not the question in this case.

---

[2] Our interpretation is consistent with—and therefore buttressed by—our sister circuits' interpretations of this particular defendant's Plan. Specifically, the Fourth Circuit said, "if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job and for whatever medical and vocational reasons he is unable to perform an alternative job, then his total disability results from a mine accident." *Boyd v. Trs. of UMW Health & Ret. Funds*, 873 F.2d 57, 59 (4th Cir. 1989) (citation omitted). To similar effect the Sixth Circuit noted that "[t]he question is whether the accident contributed in some part to the disability of [the applicant]." *Odom v. UMWA Health & Ret. Funds*, 687 F.2d 843, 847 (6th Cir. 1982).

The Plan also argues that its denial is strongly supported by the date of onset for Cerentano's SSDI benefits—the date of his car accident, which is more than four years after he last worked in the mines. Yet the date of onset does not cure the trustees' incomplete analysis, nor preclude the possibility that injuries from mine accidents were a causal link in the ALJ's decision.

In sum, the trustees should have examined *all* of the injuries—both severe and non-severe—that the ALJ relied on in finding Cerentano disabled. The trustees also should have determined which of those injuries were caused by mine accidents and whether, in combination, those mine-related injuries comprised "a causal link" in the ALJ's award of disability benefits. Of course, we do not answer these questions here. We merely remand to the trustees to address these issues in a new round of review. *See Holmstrom*, 615 F.3d at 778 ("When an ERISA plan administrator's benefits decision has been arbitrary, the most common remedy is a remand for a fresh administrative decision rather than an outright award of benefits … .").

### III. Conclusion

For the foregoing reasons, we REVERSE and REMAND to the Plan trustees.