NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 11, 2014[*]
Decided December 12, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 14-1819

| | |
|---|---|
| WILLIE J. WALTON, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
|     *v.* | |
| | No. 13 C 2580 |
| NATIONAL INTEGRATED GROUP | |
| PENSION PLAN, et al., | George M. Marovich, |
|     *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Willie Walton disputes the amount of his monthly pension benefit from National Integrated Group Pension Plan, a multiemployer retirement plan. Walton sued the Plan and its Board of Trustees, claiming what the district court understood to be a challenge to the benefit calculation arising under the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001 to 1461. The court granted summary judgment for the defendants, reasoning that it was undisputed that the calculation was correct because Walton had

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2).

worked only briefly for a single employer that was contributing to the Plan, and that he was not entitled to a lump-sum distribution. We affirm that decision.

Walton worked for American Steel Container Corporation from October 1988 through December 1989. At that time American Steel Container was a Plan participant, and Walton earned one pension-benefit unit for his 14 months' service. He did not work at the company long enough for his benefits to vest, but when American Steel Container withdrew from the Plan in 1993, its share of the pension fund's assets was greater than its outstanding obligations to vested employees. The surplus was committed to providing a pension benefit to employees who were not vested, including Walton, based on the terms of the Plan's existing agreement with American Steel Container. Walton's one benefit unit entitled him to $8.10 per month for life beginning at age 65.

When Walton received his first check after turning 65, he thought it was too small and asked the Plan to verify the benefit amount. The Plan wrote Walton explaining the calculation, but he refused to accept this answer. The Plan sent more letters, but none of them satisfied Walton. Eventually he demanded that the Plan stop sending the monthly checks and end all communication with him. The Plan agreed to stop mailing benefit checks without Walton's consent but told him that other mailings containing disclosures required by law still must be sent.

Walton then sued. The district court construed his claims for breach of contract, discrimination, and "malfeasance" as arising under ERISA, *see* 29 U.S.C. §§ 1132(a)(1)(B), 1140, 1104(a)(1), and thus within its subject-matter jurisdiction. On those claims the court granted summary judgment for the defendants after concluding that Walton had been receiving the benefit amount he was due, and that he lacked evidence of discrimination or breach of fiduciary duty by the Plan. The court then dismissed Walton's remaining state-law claims, including a claim of "harassment," on the ground that ERISA preempts them. *See id.* § 1144(a).

Litigants who appeal an adverse judgment must identify their disagreements with that decision. *See Cole v. C.I.R.*, 637 F.3d 767, 772–73 (7th Cir. 2011); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). We read pro se briefs liberally, *Anderson*, 241 F.3d at 545, but we cannot see anywhere in Walton's opening brief an argument that the district court erred in evaluating the evidence at summary judgment. Walton's disappointment with the small amount of his monthly pension benefit is evident, but the Plan's explanations for why it concluded that Walton was eligible for a pension annuity, and how it arrived at the monthly amount, were undisputed. Because the pension-plan

documents give the administrator responsibility for interpreting its provisions and determining benefit eligibility, we cannot disturb the administrator's explanations unless they are "downright unreasonable." *See Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 321–22 (7th Cir. 2007); *see also Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005). The Plan's explanations are reasonable in light of the evidence. The plan documents explicitly provide that, if a withdrawing employer's share of the pension-fund assets exceeds its liabilities to vested employees, the surplus will be used to provide pension benefits to employees who were not vested. According to the Plan and its Board, this is indeed what happened with Walton. The defendants also submitted evidence that workers accrued one benefit unit for each full year of employment with a Plan participant, that Walton did not work for any participant except American Steel Container, that the benefit level effective during Walton's employment was $8.10, and that each annuitant receives a monthly check equal to the benefit level times his or her total benefit units.

In his reply brief Walton asserts that American Steel Container—which is not a party to this litigation—fired him for discriminatory reasons. There would be numerous impediments to asserting this dated allegation even against his former employer, but for purposes here it is enough to note that the Plan cannot be liable under ERISA for a separate employer's discrimination against an employee. *See* 29 U.S.C. § 1140; *Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 826–27 (7th Cir. 2014); *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 161 (11th Cir. 1992).

AFFIRMED.