In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-1149

JEFFERY LANE,

*Plaintiff-Appellant*,

*v.*

STRUCTURAL IRON WORKERS LOCAL NO. 1
PENSION TRUST FUND,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-6769 — **Jorge L. Alonso**, *Judge*.

———————————

ARGUED SEPTEMBER 21, 2022 — DECIDED JULY 17, 2023

———————————

Before FLAUM, SCUDDER, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Jeffery Lane was a union iron worker
until a combination of injuries left him unable to carry on.
Lane's union established a trust fund to provide financial sup-
port to disabled members. Lane's application for those bene-
fits was denied. The Fund explained that Lane failed to con-
nect his disability to an on-the-job injury, as the Fund's gov-
erning documents required. Dissatisfied, Lane sought judicial

review in federal district court, where he fared no better. Because the Fund's decision was not downright unreasonable, we agree with the district court and affirm.

I

The Structural Iron Workers Local No. 1 Pension Trust Fund arose from cooperation between contractors and labor to provide union iron workers with retirement and disability benefits. The Fund is managed by a Board of Trustees whose members are drawn equally from both sides. The Trustees oversee the Fund in accordance with the Pension Plan that created it. Day-to-day operations, including questions of benefits eligibility, are managed by the Fund's Administrator.

Article 4 of the Plan governs disability pensions. Eligibility for disability payments turns, in part, on how many pension credits an iron worker has accumulated (a credit is equal to 1,000 hours of work on union jobs in a given year). Fifteen or more credits entitles an employee to disability benefits upon becoming "totally and permanently disabled," which the Plan defines as "entitled to disability payments under the Social Security Act." Those with more than five but fewer than fifteen credits are also entitled to disability benefits but are subject to an additional requirement: they must be "totally and permanently disabled *as the result of an accident sustained while on the job* and employed by a Contributing Employer as an Iron Worker" (emphasis ours).

Jeffery Lane earned nine credits as a union iron worker. In August 2019, he applied to the Fund for disability benefits. Earlier that year, the Social Security Administration approved Lane's application for Social Security Disability Insurance. This award satisfied the Plan's requirement that Lane be

"totally and permanently disabled" but, since he had fewer than fifteen credits, he still needed to show that his disability was work-related.

The SSA's award letter did not explain why it concluded that Lane was disabled. As a result, the Fund's Administrator, John Gardiner, reviewed Lane's work history and determined that more information would be needed to connect Lane's disability to an on-the-job injury. Lane sent him his SSA award letter, along with an email explaining that he suffered on-the-job injuries to his left shoulder and knee in May 2014 that never fully healed. Gardiner replied that without something more concrete tying his SSA award to his work injuries, like the Social Security determination letter explaining why SSA was awarding him benefits, Lane's application could not be approved.

Gardiner encouraged Lane to send whatever medical records the SSA relied on, and a back-and-forth ensued. Lane sent various medical records, none of which connected his disability to the May 2014 accident. Gardiner asked again for the SSA's determination letter, which Lane did not provide. Instead, Lane admitted that his SSA award was determined "on a combination of factor[s] and not just the" May 2014 accident. Lane did, however, point Gardiner to an Illinois worker's compensation file related to that accident. But that file was sparse and added little new information to the mix. Finally, Lane provided a letter from his physician, Dr. Scott Cordes. Cordes wrote that Lane's medical history is "significant for several work-related injuries leading to his present status where he is on social security disability. … All these injuries have been due to work-related events." But that letter never identified the work-related events it referred to or

whether those injuries were the sole basis for the SSA's disability award. Since none of the evidence clearly tied Lane's disability to an injury or combination of injuries he sustained while on a Fund-covered job, the Fund ultimately denied Lane's application for benefits.

Lane appealed the Fund's decision to its Trustees. In support, Lane submitted more evidence: a letter he wrote detailing the extent (but not origin) of his injuries, a letter from his attorney explaining the history of the Social Security proceedings, and a second letter from his physician. In his second letter, Dr. Cordes purported to "clarify" that his original letter was intended to relate Lane's disability back to May 2014—the date of Lane's alleged workplace injury. But he failed to justify that statement. The Trustees, in turn, elected to defer resolving Lane's appeal pending a report from an independent medical reviewer. The Trustees sent all the evidence to the Medical Review Institute of America, where Dr. Patrick Sterling concluded that "the records do not support that the SSA disability relates back to the" May 2014 accident, the only on-the-job accident Lane identified. The Trustees then, without giving Lane a chance to respond to the independent expert's report, affirmed the denial.

Lane filed suit in federal court under ERISA, the Employee Retirement Income Security Act, a federal law that governs multiemployer benefit plans like the Fund. See 29 U.S.C. §§ 1002(1), 1002(7), 1132(a)(1)(B). Both sides moved for summary judgment, and the district court ruled for the Fund. Lane now appeals.

II

Lane's arguments on appeal fall into two familiar camps—procedural and substantive. Lane argues that he wasn't allowed to respond to certain evidence the Trustees relied on in affirming the Administrator's decision. If we agree, that procedural error alone would require a do-over. On the substantive side, Lane argues that the Trustees' decision was irrational and overlooked crucial evidence. We take each in turn.

A

The Department of Labor has promulgated regulations to clarify ERISA's "full and fair review" requirement. See 29 U.S.C. § 1133(b). One regulation requires that a claimant be provided the opportunity to review and comment on all of the materials a fund might consider before adjudicating his claim. 29 C.F.R. § 2560.503-1(h)(4). Lane argues that the Fund's failure to provide him with a copy of the independent medical examiner's report before affirming the denial of his claim violated that regulation, which the Plan expressly incorporated.

The parties agree that Lane never saw the independent examiner's report before the Trustees affirmed Gardiner's denial. Normally that would require a remand because the failure to let a claimant respond to newly produced evidence denies him the full and fair review ERISA demands. See *Zall v. Standard Ins. Co.*, 58 F.4th 284 (7th Cir. 2023) (reversing for failure to comply with § 2560.503-1(h)(4)). The trouble for Lane is that he never made this argument to the district court. The Fund points out that omission in its brief to us. Lane's reply offers no response; he does not say when in the district court he raised the Fund's failure to provide him with the report,

*contra* Fed. R. App. P. 28(a)(8)(A), and our own search yielded
nothing.

It is a cardinal rule of appellate practice that we ignore arguments not presented below. *Harding v. Giddings*, 73 F. 335,
341 (7th Cir. 1896); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721
(7th Cir. 2011). While we can affirm on any basis supported
by the record, the converse is not true: Arguments not made
in the district court are waived on appeal. E.g., *Belom v. Nat'l
Futures Ass'n*, 284 F.3d 795, 799 (7th Cir. 2002). Except in truly
exceptional circumstances inapplicable here, see, for example,
*Mother and Father v. Cassidy*, 338 F.3d 704, 707 (7th Cir. 2003),
or *Hively v. Ivy Tech Community College of Indiana*, 853 F.3d 339,
351 (7th Cir. 2017) (en banc), we do not reverse district courts
for failing to address arguments they never heard. Cf. *Heller
v. Equitable Life Assur. Soc. of U.S.*, 833 F.2d 1253, 1261 (7th Cir.
1987) ("[A] trial judge may properly depend upon counsel to
apprise him of the issues for decision. He is not obligated to
conduct a search for other issues which may lurk in the pleadings."). Since Lane never raised the Trustees' misstep in the
district court, he may not do so on appeal.

B

Turning to the substance: The district court granted summary judgment to the Fund because its evaluation of the evidence and the Plan's language was reasonable. We give the
district judge's conclusion no deference and view the evidence in the light most favorable to the party that lost below.
*Cerentano v. UMWA Health & Ret. Funds*, 735 F.3d 976, 981

(7th Cir. 2013); *O'Regan v. Arb. Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001).

Our deference to the Trustees' decision turns on whether the Fund's Plan gives the Administrator discretionary authority. If it does not, our review of a claimant's request for benefits is plenary. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). By contrast, when a plan empowers an administrator to determine eligibility for benefits, we review the denial of benefits under the deferential arbitrary-and-capricious standard. *Zall*, 58 F.4th at 291. Here, the Plan confers discretion on the Administrator, so we adopt the deferential outlook.

To survive arbitrary-and-capricious review, an administrator must offer the claimant a full and fair review of his claim and communicate rational reasons for its decision tied to both the evidence and the plan's terms. *Majeski v. Metropolitan Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009); *Est. of Jones v. Children's Hosp. & Health Sys. Inc. Pension Plan*, 892 F.3d 919, 923 (7th Cir. 2018). Such review is not a rubber stamp; unreasoned or irrational decisions do not pass muster. *Holmstrom v. Metropolitan Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010). At the same time, "a plan administrator's decision will not be overturned absent special circumstances such as fraud or bad faith, if it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Dragus v. Reliance Standard Life Ins. Co.*, 882 F.3d 667, 672 (7th Cir. 2018) (cleaned up).

The district court thoroughly examined the Plan language, Lane's evidence, and the Trustees' decision putting the two together. We agree with the court's conclusion that the Trustees acted well within their discretion.

Start with the Plan's language. The Plan provides that claimants like Lane are entitled to payment if they become "totally and permanently disabled as the result of an accident sustained while on the job." § 4.01(a)(2). "As a result of" is not a self-defining term. *Cerentano*, 735 F.3d at 981. Interpretation of that key phrase thus falls to the Trustees, whom the Plan makes the "sole judges of the standard of proof." § 7.04; see *Cerentano*, 735 F.3d at 981. Elsewhere the Plan defines "totally and permanently disabled" as a participant's "enti-tle[ment] to disability payments under the Social Security Act." § 4.03(a). And, as noted above, the Plan vests the Trustees with the discretionary authority to determine whether an applicant is eligible for benefits. § 7.04.

Now, the evidence. Lane submitted "everything [he could] supply" to support his application: the SSA award let-ter, various medical records, and two letters from his treating physician. Lane's physician wrote that he suffered from "sev-eral work-related injuries," but did not state that the May 2014 injury was the cause of his total disability. After receiving and reviewing all the evidence Lane submitted to the Fund, the independent medical reviewer reached the same conclusion: there was no clear connection tying Lane's disability to a workplace injury. Given the dearth of causation evidence, the expert's conclusion was far from arbitrary. More importantly for our purposes, the Trustees could rely on that conclusion. See *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 324–25 (7th Cir. 2007) (administrators may accept an independent reviewer's conclusion "so long as [he] provided a non-arbitrary explana-tion for his conclusion," which explained his "departure from previous doctors' opinions").

Marrying the Plan's text to the evidence, and after considering Dr. Sterling's independent medical opinion, the Trustees reasonably concluded that Lane was not entitled to benefits. Vested with both the authority to interpret "as a result of" and the responsibility for administering the Plan, the Trustees were empowered to require a causal connection between Lane's May 2014 workplace injury and his total and permanent disability. On this record, it was reasonable for the Trustees to conclude that none existed.

None of Lane's counterarguments persuades. Lane first contends that the Trustees added a requirement found nowhere in the plan—that the Social Security Administration's letter specify why it awarded benefits. We disagree. The Trustees' focus on the SSA letter was well-placed; if it had specified that Lane's disabilities related to the May 2014 accident, the Trustees concede that would have resolved the matter in Lane's favor. Of course, that wasn't the case. As a result, the Trustees (like Gardiner before them) proceeded to consider Lane's other evidence to determine whether his disability was work-related. That further consideration seriously undermines Lane's allegation that the Trustees created a new requirement. Here's why: Distilled to its essence, Lane alleges that the Trustees treated an explicit connection in his SSA letter between his work and his disability as a necessary condition rather than a sufficient condition. But if that were the case, why would the Trustees go through the trouble of considering other evidence? If Lane were correct, SSA's silence on causation would have been enough to deny his claim. That the Trustees considered everything else Lane submitted reveals that they imposed no requirement that SSA be explicit about the reasons for its award.

Lane next contends that the Trustees should have sought more information to support his claim. While it is true that the Trustees could have gathered greater evidence to support Lane's claim, they had no duty to do so under the Plan's terms, which state that a claimant must provide "all information and evidence the Trustees deem necessary to properly evaluate the merit of the claim." § 7.05(a). Responsibility for any undiscovered evidence lies with Lane. To be sure, ERISA contemplates a collaborative process for adjudicating claims. *Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 21 (4th Cir. 2014). That collaboration means administrators bear some responsibility for producing evidence to support a claimant's application. If evidence is readily available and would clarify a claimant's entitlement to benefits, the administrator should undertake reasonable efforts to obtain that information. But much like judges, plan administrators are not pigs hunting for truffles. They have limited time and resources, see *id*. at 22, and Lane was best positioned and best motivated to provide more information in support of his claim. Even still, Gardiner did seek greater information and evidence from Lane. On his own initiative, Gardiner circled back with Lane to see if other evidence had become available, offering guiding questions about information that would help Lane's chances. When Lane responded that the worker's compensation report might be useful, Gardiner retrieved it. The overarching story the record tells is that, time and again, Lane was asked for more evidence to support his claim and, time and again, Lane offered nothing connecting his disability with a workplace injury. It was reasonable for the Trustees to conclude that Lane provided no new evidence because no such evidence existed.

Third, Lane argues that the Trustees ignored credible evidence in the record connecting his disability to a workplace

injury. We view things differently. Lane misreads the Plan. A work-related disability is not enough to receive benefits under the Plan—a claimant like Lane must be "entitled to disability payments under the Social Security Act" "as the result of an accident sustained while on the job." Dr. Cordes may be correct that Lane's shoulder injury happened while working a union job in May 2014. But that does not mean Lane's entitlement to disability payments stemmed from that injury. The Trustees did not ignore Cordes's letter, as Lane alleges; they simply found it unconvincing—something the Plan, by vesting them with discretionary authority, empowered them to do. See, e.g., *Hennen v. Metropolitan Life Ins. Co.*, 904 F.3d 532, 540 (7th Cir. 2018) ("Ordinarily, a plan administrator is free to choose among different medical opinions so long as the administrator provides a rational explanation that has support in the record.").

Lane's final argument is that the Trustees asked Dr. Sterling the wrong question when it hired him to do an independent review. Rather than ask whether the SSA award was connected to a workplace injury, Lane says the Trustees should have asked Dr. Sterling to determine whether Lane's workplace injury was a disabling condition. Once again, we disagree. Lane's alternative, open-ended inquiry into whether an injury is a "disabling condition" (a term found nowhere in the Plan and undefined in Lane's brief) would not track the Plan's unambiguous requirement that claimants be entitled to disability payments under the Social Security Act.

                                *       *       *

We have considered Lane's other arguments, but none has merit. Lane waived his primary procedural objection by not making it below, and the Trustees' decision was reasonable.

We therefore affirm the district court's entry of summary judgment for the Fund.

AFFIRMED