In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1752

JOHN DRAGUS,

*Plaintiff-Appellant*,

*v.*

RELIANCE STANDARD LIFE INSURANCE
COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 9135 — **Marvin E. Aspen**, *Judge.*

ARGUED NOVEMBER 28, 2017 — DECIDED FEBRUARY 14, 2018

Before BAUER, ROVNER, and SYKES, *Circuit Judges*.

BAUER, *Circuit Judge.* Plaintiff-appellant, John Dragus,
brought suit against defendant-appellee, Reliance Standard
Life Insurance Company ("Reliance"), under the Employee
Retirement Income Security Act for denial of long-term
disability ("LTD") benefits. After the district court denied

Dragus' request for discovery outside the claim file record, both parties moved for summary judgment. Before the court ruled, Dragus filed a motion to supplement the claim record with a fully favorable Social Security Disability Insurance ("SSDI") decision. The district court denied the motion to supplement and granted summary judgment in favor of Reliance. Dragus now appeals.

## I. BACKGROUND

Dragus worked as an Internet Sales Manager for SMG/McCormick Place ("SMG"), a private venue-management firm that manages events at Chicago's McCormick Place and Navy Pier. As an Internet Sales Manager, Dragus managed and coordinated all information technology and telecommunication needs for individual vendors at conventions and meetings.

Dragus experienced severe neck pain for several years leading up to his claim for LTD benefits. In 2011, he underwent a three-level cervical spine fusion, but the surgery failed to resolve his pain and Dragus struggled to meet the demands of his job. Over the next two years, Dragus underwent numerous treatments to deal with the pain through physical therapy, steroid injections, and a rhizotomoy—a surgical procedure that severs nerve roots in the spinal cord through the use of an electrified probe. Physicians also prescribed Norco, a pain medication, which caused memory impairment and hand tremors.

In June 2013, when all of these treatments failed, Dragus went on short-term disability to participate in a two-month, full-time pain management program. After completing the program, Dragus returned to work full-time. Within two

months of his return, the pain issues returned, resulting in excessive absences from work. On February 7, 2014, SMG reprimanded him and informed him that any future absences would require a physician's excuse.

On April 4, 2014, Reliance received Dragus' LTD benefits claim. The Group Policy describes the coverage provided as follows:

> INSURING CLAUSE: We will pay a Monthly Benefit if an Insured:
>
> 1) Is Totally Disabled as the result of a Sickness of Injury covered by this Policy;
>
> 2) Is under the regular care of a Physician;
>
> 3) Has completed the Elimination Period; and
>
> 4) Submits satisfactory proof of Total Disability to us.

The Group Policy confers discretionary authority on Reliance to determine eligibility for benefits and to interpret the provisions of the Group Policy. Reliance also serves as the claims review fiduciary. Dragus submitted an Attending Physician's Statement and notes from his treating psychiatrist with his LTD claim. At Reliance's request, Dragus also applied for SSDI benefits.

A Vocational Rehabilitation Specialist used Dragus' job description, received from SMG, to identify Dragus' regular

occupation under positions from the Department of Labor's Dictionary of Occupational Titles ("DOT"). Ultimately, the specialist determined that Dragus' regular occupation was a combination of Customer-Equipment Engineer, Telephone and Telegraph, and Telecommunications Specialist. The Customer-Equipment Engineer position is a light duty position and the Telecommunications Specialist position is a sedentary position.

Due to Dragus' history of narcotic dependent chronic pain, as well as depression and anxiety, a registered nurse who reviewed the medical records suggested that Reliance retain a psychiatrist and an occupational medicine specialist. Reliance retained the services of Professional Disability Associates, a third-party vendor, for independent physicians to review and discuss Dragus' medical records. These two physicians certified they did not accept compensation dependent upon a specific outcome of their review.

After review and discussion with the psychiatrist, the occupational medicine specialist noted restrictions mainly for preventive measures, but overall opined that Dragus retained the physical capability to function at the light level of physical activity for a full day of work. Furthermore, the specialist noted that the cervical spine MRI did not support the self-reported neck pain, and the medical records did not substantiate any nerve compression or impingement causing the pain.

After review and discussion with the occupational medicine specialist, the psychiatrist concluded that the records supported anxiety and pain disorder, however, neither diagnosis affected Dragus' functional capacity, as the severity of his anxiety was mild. To support this finding, the psychiatrist

pointed to Dragus' global assessment of functioning ("GAF") scores. A GAF score between 61 and 70 indicate some mild symptoms.[1] Dragus had a score of 65 from testing in March 2013, and 70 from testing in May 2014.

Based on these reports, Reliance denied Dragus' application on September 29, 2014. The denial letter stated that, "the available medical records and information in [his] claim did do not support a physical or mental condition that was at a level of severity which would have rendered [him] unable to perform the material duties of [his] Regular Occupation on a Full-time basis." Reliance further noted that, due to the chronic nature of his claimed neck and shoulder pain, during which time he successfully worked full-time at SMG, "it is expected that the medical records would document an acute change or significant deterioration in [his] physical or mental status on or around" the date he stopped working. However, the medical records failed to support this sort of change.

On March 6, 2015, through counsel, Dragus requested reconsideration. To review the denial, Reliance obtained two additional medical opinions from Network Medical Review Company, a second third-party vendor. Again, Reliance sought independent review from a psychiatrist and occupational medicine specialist, as suggested by Reliance's clinical team. Both physicians certified they did not accept compensation dependent upon a specific outcome of their review.

---

[1] *Global Assessment of Functioning (GAF) Scale*, RATTLER/FIREBIRD ASS'N, http://www.rattler-firebird.org/va/gafchart.php (last modified June 3, 2010, 6:28 UTC).

After review of the records, the psychiatrist opined that, despite his history of depression and anxiety, Dragus did not have limitations or restrictions in his daily activities. The psychiatrist further opined that the records did not indicate mental status problems impacting his ability to work.

After review of the records, the occupational medicine specialist noted that the cognitive complaints were secondary to pain and emotional factors rather than underlying cognitive loss. The specialist opined that the medical records did not provide clinical data to substantiate the severity of Dragus' complaints. The specialist also noted that Dragus' medical records indicated an ability to walk three miles and only mild tenderness to palpation and limitation in cervical range of motion. Therefore, the specialist opined that Dragus had the ability to work full-time at a light level on a consistent basis, subject to the following restrictions: sitting up to seven hours continuously and eight hours total per an eight hour work day; standing and walking four hours continuously and seven to eight hours total per an eight-hour workday; climbing unrestricted; lifting and carrying up to 50 pounds of force occasionally and up to 25 pounds frequently; pushing and pulling up to 75 pounds occasionally; and turning head and extending neck only occasionally.

On April 22, 2015, Reliance provided Dragus with the reports and afforded Dragus an opportunity to comment on the opinions. Dragus responded with his objections, and Reliance forwarded this correspondence to the specialist. Upon review, the specialist determined that the correspondence did not change his medical opinion.

In response to Dragus' objections, Reliance obtained a labor market survey on June 24, 2015, to determine whether Dragus' regular occupation could be performed within the restrictions and limitations identified by the second reviewing occupational medicine specialist. This survey received responses from ten identified positions across the nation, equivalent to Dragus' regular occupation. The survey ultimately concluded that five of these positions could be performed with the physical restrictions identified.

On August 19, 2015, Dragus sent another correspondence contesting the survey and provided a treating physician's opinion that Dragus' psychiatric symptoms and pain limited his ability to work. Reliance forwarded this to the two reviewing physicians, who both subsequently opined that their conclusions remained the same.

On September 18, 2015, Reliance affirmed its final determination to deny LTD benefits, pointing to a lack of evidence that the symptoms prevented him from performing material duties.

### A. Procedural History

Dragus commenced a civil action in the Northern District of Illinois under § 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)) after exhausting administrative review of Reliance's determination. The parties agreed that the arbitrary and capricious standard of review applied based on the Group Policy's terms. Dragus requested additional discovery outside the administrative record provided by Reliance. The district court denied this request, and both parties subsequently filed for summary judgment.

While these motions were pending, Dragus received a fully favorable notice of decision from his SSDI benefits claim. Dragus moved to supplement the record with the SSDI decision. The district court denied the motion to supplement and granted summary judgment in favor of Reliance. The district court reached several conclusions including: (1) that Reliance's initial claim decision was untimely, but any penalty to Reliance was waived because Dragus waited for that untimely decision and filed a subsequent appeal prior to filing suit; (2) that although Reliance failed to invoke its authority under the policy to have Dragus examined by a physician of its choosing, Reliance's utilization of file review physicians certified in Occupational or Preventive Medicine possess "appropriate training and experience in the field of medicine involved in the medical judgment" to assess Dragus' medical evidence; (3) that Reliance appropriately defined Dragus' occupation by combining two occupations found in the DOT; and, as a result, (4) that Reliance's decision to deny Dragus' LTD application was not arbitrary and capricious. Dragus now appeals three issues: (1) that Reliance's failure to render a timely decision under 29 C.F.R. § 2560.503-1(f)(3) compels *de novo* review; (2) that Reliance's decision was arbitrary and capricious; and (3) that the district court improperly denied Dragus' motion to supplement the record with the favorable SSDI decision.

## II. DISCUSSION

Summary judgment should be granted if there is "no genuine issue as to any material fact." *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 815 (7th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "We review a grant of

summary judgment *de novo*, viewing all facts and drawing all reasonable inferences" in favor of the non-movant. *Militello v. Cent. States, Se. & Sw. Areas Pension Fund*, 360 F.3d 681, 685 (7th Cir. 2004).

To lower the standard of review for a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) from *de novo* to arbitrary and capricious, "the plan should clearly and unequivocally state that it grants discretionary authority to the administrator." *Perugini-Christen v. Homestead Mortg. Co.*, 287 F.3d 624, 626 (7th Cir. 2002). Here, both parties agree the policy grants discretionary review to Reliance. Thus, the arbitrary and capricious standard of review applies.

### A.  Untimeliness of Administrative Decision

First, we turn to whether Reliance's failure to render a timely decision compels *de novo* review. 29 C.F.R. § 2560.503-1(b) imposes a penalty of the loss of discretionary authority on plan administrators for failing to maintain reasonable claims procedures. We agree with Dragus that Reliance failed to render a timely decision according to the regulations set forth in 29 C.F.R. § 2560.503-1(f)(3). However, as set forth in § 503-1(l)(2)(i), "if the plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan." It is at this point in the claims process that "the claimant is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." *Id.*

If Dragus wanted to pursue available remedies for Reliance's untimely denial, he should have done so when the issue arose. Dragus argues that ERISA claims should not require the help of a lawyer; this argument is moot because Dragus was represented by counsel no later than March 6, 2015, when he submitted a request for reconsideration. It was at this time that Dragus should have argued untimeliness. Instead, he pursued administrative review through an appeal, effectively waiving this argument. Thus, we find the remedies under § 503.1(l)(2)(i) inapplicable and *de novo* review shall not be applied.

## B.  Arbitrary and Capricious

Because we find *de novo* review inapplicable, we next turn to whether Reliance's denial of Dragus' claim for LTD benefits was arbitrary and capricious. Under the arbitrary and capricious standard, we will uphold the district court's decision so "long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Cerentano v. UMWA Health & Ret. Funds*, 735 F.3d 976, 981 (7th Cir. 2013) (quoting *Tompkins v. Cent. Laborers' Pension Fund*, 712 F.3d 995, 999 (7th Cir. 2013)). In the case of a denial, "ERISA requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for 'full and fair review' by the administrator." *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 688 (7th Cir. 1992) (quoting 29 U.S.C. § 1133(2)). A plan administrator's decision will not be overturned "absent special circum-

stances such as fraud or bad faith, if 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Exbom v. Cent. States*, *Se. & Sw. Areas Health & Welfare Fund*, 900 F.2d 1138, 1142 (7th Cir. 1990) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)). "In conducting this review, we remain cognizant of the conflict of interest that exists when the administrator has both the discretionary authority to determine eligibility for benefits and the obligation to pay benefits when due." *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 861 (7th Cir. 2009). In analyzing such a case, as presented here, "the standard of review remains the same, but the conflict of interest is 'weighed as a factor in determining whether there is an abuse of discretion.'" *Id.* (quoting *Metro. Life Ins. v. Glenn*, 554 U.S. 105, 115 (2008)).

Reliance retained four independent physicians to review and take into consideration Dragus' medical records, complaints, and medication regiment. Each physician used this information to provide thoughtful opinions pertaining to Dragus' medical history, treatment, correlation of his somatized symptoms, mental health conditions, and cognitive complaints. Each physician also certified he was not compensated for a specific outcome. And, each physician rendered the same opinion based on his personal thorough, unbiased investigation.

Furthermore, Reliance afforded Dragus more claim review process than the Department of Labor requires under 29 C.F.R. § 2560.503-1. Reliance provided Dragus copies of the independent medical opinions and the vocational labor market survey.

Reliance also afforded Dragus the opportunity to engage in dialogue throughout the process, allowing him to rebut the opinions and the survey, with additional consideration from the reviewing physicians, before making its final decision.

Additionally, the conflict of interest present in this case does not assist Dragus in finding Reliance's decision arbitrary and capricious. The Supreme Court has directed us that a conflict of interest should "act as a tiebreaker when the other factors are closely balanced." *Glenn*, 554 U.S. at 117. We find this case in no need of such a tiebreaker. Even if such a tiebreaker were needed, Reliance took appropriate precautions to eliminate the conflict of interest. Reliance obtained two separate third party vendors to secure independent physicians with relevant medical specialties to review Dragus' claim. For the original claim, Reliance referred the file to Professional Disability Associates for dual independent physician reviews. Reliance requested physicians specialized in psychiatry and occupational medicine according to the opinion of a registered nurse who reviewed the medical records. The nurse substantiated this opinion noting the history of narcotic-dependent chronic pain, depression, and anxiety from which Dragus suffered. Upon Dragus' appeal from the initial denial, Reliance contacted Network Medical Review Company for two additional independent opinions from a psychiatrist and occupational medicine physician, the relevant fields as determined by Reliance's clinical team.

All four physicians took into consideration Dragus' complaints, medication regimen, medical history, treatment, correlation of his somatized symptoms, mental health conditions, and cognitive complaints. And, all four physicians made

the same overarching conclusion: that Dragus had the functional capacity to perform the duties of a full-time light duty occupation. Additionally, each physician certified that they were not compensated based on the outcome of their review.

With the conflict of interest appropriately eliminated by Reliance, no contention of bad faith or fraud, and a well-reasoned decision supported by the evidence, we find Reliance's decision was not arbitrary and capricious.

### C. Supplementing the Record with SSDI Decision

Finally, we turn to whether the district court improperly denied Dragus' motion to supplement the record with the SSDI decision. "We have allowed parties to take discovery and present new evidence in ERISA cases subject to *de novo* judicial decisions, … but never where the question is whether a decision is … arbitrary and capricious." *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 982 (7th Cir. 1999) (internal citations omitted). Because this case is subject to the deferential arbitrary and capricious standard and not *de novo* review, we find that the district court did not err in denying to supplement the record.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's findings.