In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3524

ESTATE OF LINDA FAYE JONES, *et al.*,

*Plaintiffs-Appellants*,

*v.*

CHILDREN'S HOSPITAL AND HEALTH SYSTEM INCORPORATED
PENSION PLAN,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:16-cv-01235-LA — **Lynn Adelman**, *Judge*.

ARGUED MAY 29, 2018 — DECIDED JUNE 13, 2018

Before BAUER, BARRETT, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Three days into retirement and three
days before the start of her pension, Linda Faye Jones died.
The Administrative Committee, which oversees the Chil-
dren's Hospital and Health System, Inc. Pension Plan, denied
the pension to Linda's daughter and beneficiary, Kishunda
Jones. The Committee reasoned that only spouses are entitled
to benefits under the Plan when a participant dies before the

start of her pension. Because the Administrative Committee's decision was not arbitrary or capricious, we affirm.

## I. Background

Linda worked for Children's Hospital of Wisconsin for 37 years. As an employee, she was a participant in the employer-funded Plan. In August of 2015, Linda faced recurring bladder cancer, and at 60 years old, decided to retire. While formalizing her retirement, Linda received a form asking her to apply for the benefits of the Plan.

Article IV of the Plan describes the four benefits available to employees: a normal retirement pension, an early retirement pension, a deferred vested retirement pension, and a pre-retirement surviving-spouse death benefit. Section 4.4 explains the surviving-spouse benefit, which is available to a participant's spouse when the participant dies "before the Participant's annuity starting date." No other benefit provides that it is available to beneficiaries if the participant dies before payments start.

Article VI of the Plan details the benefits' payment structures. Section 6.2 states that early retirement pensions "commence with a payment due on the first day of the month next following" the date of termination and the election of benefits. Section 6.4 explains that a participant "may elect to have his pension payable" in alternative forms of annuities. One of those annuities is a ten-year annuity, described in Section 6.4(a)(iii) as:

> A ten (10) year certain life annuity providing monthly payments to the Participant for his life and, if he dies before receiving the one hundred twentieth (120th) such payment, continuing such pay-

> ments to his designated beneficiary until the aggre-
> gate payments made to him and such beneficiary to-
> tal one hundred twenty (120).

Section 6.4(d) requires a participant selecting the ten-year annuity to designate a beneficiary.

Section 6.9(e)(i), however, limits who can constitute a designated beneficiary in certain situations. Specifically, "[i]n the case of a Participant who dies prior to the date distributions begin, the Participant's designated beneficiary will be his or her surviving Spouse, if any, pursuant to the terms of Section 4.4." Otherwise, "[i]n the case of a Participant who dies after the date distributions begin, the designated beneficiary will be the individual who is designated as the beneficiary under Article VI." These varying definitions have a purpose, according to Section 6.9(d)(iv): certain tax rules do not apply to the Plan because the beneficiary of a participant who dies before distribution must be the participant's spouse.

Article VIII of the Plan vests the Administrative Committee with "full and complete discretionary authority, responsibility and control over the management, administration and operation of the Plan." That discretion extends to the authority to "formulate, issue and apply rules and regulations," "interpret and apply the provisions of the Plan," and "make appropriate determinations and calculations."

Upon receiving the application for Plan benefits, Linda opted for the early retirement pension. She also elected to receive her pension through Section 6.4(a)(iii)'s ten-year annuity. She designated her only daughter, Kishunda, as her beneficiary pursuant to Section 6.4(d).

Linda retired on August 26, 2015. Her first pension payment was therefore set to commence the next month, on September 1, 2015. She died three days prior, however, on August 29, 2015.

Kishunda petitioned the Administrative Committee for her mother's pension, and it denied her request. The Committee explained that when a participant dies before her pension starts, "the only death benefit payable by the Plan is described in Section 4.4," the surviving-spouse benefit. Kishunda appealed that decision, which the Committee also denied. It explained further that if the participant is not alive when payments are to commence under the ten-year annuity, there are no payments for the designated beneficiary to "continue" to receive. The Committee also rejected Kishunda's other, since-abandoned arguments about forfeiture and equal protection.

Kishunda then turned to state court, suing the Plan under Section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).[1] The Plan removed the case to the Eastern District of Wisconsin, where the parties cross moved for summary judgment. The district court granted the Plan's motion and denied Kishunda's, entering judgment in favor of the Plan. Noting that the case was "undoubtedly unfortunate," the district court nevertheless concluded that the Administrative Committee's interpretation of the Plan was reasonable. This appeal followed.

---

[1] As the district court pointed out, although the suit names the Estate of Linda Faye Jones as a plaintiff, Kishunda, as the denied claimant, is the only real party-in-interest.

## II. Legal Standards

We review de novo a district court's decision to grant or deny summary judgment. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). Summary judgment is appropriate when there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law. *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018).

Where, as here, a plan grants discretion to its administrator, we review the administrator's decision to deny benefits under the arbitrary-and-capricious standard. *Dragus v. Reliance Standard Life Ins. Co.*, 882 F.3d 667, 672 (7th Cir. 2018). An administrator's decision passes that deferential standard as "long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Id.* (quoting *Cerentano v. UMWA Health & Ret. Funds*, 735 F.3d 976, 981 (7th Cir. 2013)). In fewer words, "the reviewing court must ensure only that a plan administrator's decision has rational support in the record." *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 362 (7th Cir. 2017) (quoting *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011)). While an administrator's decision must have rational support, it "need not explain the reasoning behind the reasons, … that is, the interpretive process that generated the reason for the denial." *Herman v. Cent. States, Se. & Sw. Areas Pension Fund*, 423 F.3d 684, 693 (7th Cir. 2005) (quotation and modification omitted).

Federal common law, which embraces general principles of contract interpretation, governs a plan's interpretation to

the extent it is consistent with ERISA. Plan language is therefore "given its plain and ordinary meaning, and the plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement." *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012). An administrator's decision that defies a plan's plain language fails the arbitrary-and-capricious standard. *Michels Corp. v. Cent. States, Se., & Sw. Areas Pension Fund*, 800 F.3d 411, 417 (7th Cir. 2015).

### III. Discussion

The Administrative Committee's decision to deny Kishunda's claim was not arbitrary or capricious. The Committee interpreted the Plan to offer only the surviving-spouse benefit when a participant dies before her pension begins. A reasonable reading of the Plan supports this interpretation.

Consider first Section 6.9, provisions of which "take precedence over any inconsistent provisions of the Plan." Under Section 6.9(e)(i), whether the Plan gives effect to a participant's beneficiary designation depends on the date of first distribution vis-à-vis the date of the participant's death. If distribution occurs first, the designated beneficiary is the person the participant named. But if death occurs first, as happened here, the designated beneficiary is the participant's spouse, if any, "pursuant to the terms" of the surviving-spouse benefit. Given that delineation, the Plan can be reasonably (if not exclusively) read to disregard Linda's designation of Kishunda, and allow only the surviving-spouse benefit.

Section 6.9(e)(i)'s time-dependent definitions make sense when read in the context of Section 6.9 as a whole. Section 6.9

aims to ensure the Plan's compliance with the tax code—specifically, 26 U.S.C. § 401(a)(9). That tax-code provision requires that pensions purporting to be "qualified trusts" (and enjoying the tax benefits thereof) pay an employee's interests within five years of her death if she dies before distributions begin. 26 U.S.C. § 401(a)(9)(B)(ii). There are, however, exceptions to that five-year rule: if the interest is payable to a "designated beneficiary" for the life of that beneficiary, or if it is payable to a spouse and paid after the participant would have turned 70-and-a-half years old. 26 U.S.C. §§ 401(a)(9)(B)(iii), (iv); *see also* 26 C.F.R. § 1.401(a)(9)-3. Section 6.9 puts any potential death-before-distribution benefit into the latter exception. Section 6.9(e)(i) defines beneficiaries as spouses in such cases, and Section 6.9(b)(ii) requires that distributions to surviving spouses begin by the year the participant would have turned 70-and-a-half. Thus, as Section 6.9(d)(iv) explains, § 401(a)(9)'s requirements "do not apply to this Plan, since the Participant's designated beneficiary … is limited under the terms of this Plan to the Participant's surviving Spouse, if any."

The Plan, apparently concerned with the tax consequences of failing to comply with § 401(a)(9), employs a blanket rule: only spouses can collect benefits when the participant dies before distribution. *Cf.* 26 U.S.C. § 401(a)(9)(B)(iv). That decision has an unfortunate consequence here, but in light of Section 6.9, it is not an unreasonable one.

Kishunda's arguments to the contrary misunderstand Section 6.9. She submits that Section 6.9(a) incorporates § 401(a)(9), and that § 401(a)(9) does not prevent designated beneficiaries from receiving benefits when the participant dies before distribution. That is true, in principle—though

perhaps not in Kishunda's case, as § 401(a)(9) requires com-
pliant plans to pay designated beneficiaries within five years
or "over [their] life," and she claims a ten-year annuity. 26
U.S.C. §§ 401(a)(9)(B)(ii), (iii). In any event, the incorporation
of § 401(a)(9) does not aid Kishunda's claim. That provision
dictates when a plan must distribute benefits depending on
the recipient; it does not dictate who has the right to receive
benefits. *See Reklau v. Merchs. Nat'l Corp.*, 808 F.2d 628, 631 (7th
Cir. 1986). Section 6.9, however, does. To meet § 401(a)(9)'s re-
quirements, Section 6.9 dictates who constitutes a designated
beneficiary when and implements corresponding distribution
mandates. Section 401(a)(9) of the tax code may not limit des-
ignated beneficiaries to surviving spouses when participants
die before distribution, but Section 6.9 of the Plan does.

Kishunda also contends that because Section 6.9(e)(i) ref-
erences Section 4.4, it must apply only to the surviving-spouse
benefit, and not to the ten-year annuity she pursues. That in-
terpretation is flawed in two respects. First, it renders Section
6.9(e)(i) meaningless. Section 4.4 does not use the phrase "des-
ignated beneficiary" and by its terms covers only spouses, so
there is nothing for Section 6.9(e)(i) to add to Section 4.4. *See
Call v. Ameritech Mgmt. Pension Plan*, 475 F.3d 816, 821 (7th Cir.
2007) (not crediting a participant's interpretation that makes a
"section superfluous"). Second, the more natural—and rea-
sonable—reading of Section 6.9(e)(i)'s reference to Section 4.4
is that because only spouses can be the beneficiaries of partic-
ipants who die before distribution, the Plan treats their bene-
fits as surviving-spouse benefits.

Kishunda's additional argument about waiver is without
merit. The Plan argued below that Section 6.9 is designed to

comply with § 401(a)(9)—namely, in response to Kishunda's since-abandoned claim that the Plan violates § 401(a)(9).

Beyond Section 6.9, a reading of the Plan on the whole supports the Administrative Committee's interpretation. Of the four benefits, only the surviving-spouse benefit is expressly payable when the participant dies before the "annuity starting date." It was reasonable for the Committee to infer from that specification—and the other benefits' lack thereof—that only the surviving-spouse benefit was payable. *Cf. Anstett v. Eagle-Picher Indus., Inc.*, 203 F.3d 501, 505 (7th Cir. 2000) (holding, based on other plan provisions, that an employer "knew how" to limit certain benefits when it so intended). In fact, were the Committee to interpret the Plan otherwise, it could end up paying multiple benefits on one participant. Had Linda been married when she died, for example, her spouse could have collected under the surviving-spouse benefit while Kishunda collected under the ten-year annuity. That result seems improbably intended, making the Committee's interpretation—that only the surviving-spouse benefit is available when a participant dies before the date of first distribution—all the more reasonable. *See Butler v. Encyclopedia Brittanica, Inc.*, 41 F.3d 285, 290 (7th Cir. 1994) (holding a plan's "construction [as] reasonable given [its] overall structure").[2]

Kishunda's conflicting reading of the Plan is both too narrow and too exacting. She focuses in isolation on the ten-year-

---

[2] Because we conclude that the Administrative Committee's interpretation was reasonable based on the plain language of the Plan, we need not consider the summary plan description. *Cf. US Airways, Inc. v. McCutchen*, 569 U.S. 88, 92 n.1 (2013) (summary plan descriptions do not constitute the terms of a plan).

annuity provision, Section 6.4(a)(iii), and concludes that be-cause it does not expressly prohibit payment when the partic-ipant dies before distribution, it must be payable. Plans, how-ever, "must be read as a whole." *Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010); *see also Huss v. IBM Med. & Dental Plan*, 418 F. App'x 498, 506 (7th Cir. 2011) (rejecting a plan interpretation that "chooses to read the lan-guage most favorable … in isolation"). As explained, Section 6.9, the surviving-spouse benefit's express coverage of deaths before distribution, and the potential for duplicative benefits all suggest that the ten-year annuity is not payable when the participant dies before distribution.

Even focusing on Section 6.4(a)(iii), the Committee's inter-pretation has support. That section is ambiguous as to whether the annuity is payable when a participant dies before her pension commences. It does not specifically say other-wise, yet it references benefits payable for the participant's "life" and explains that a beneficiary may receive "continu-ing" payments until the "aggregate payments" made to the participant and the beneficiary total 120. In other words, it suggests, without explicitly requiring, that the Plan has al-ready made payments to the participant before a beneficiary collects.

"The requirement that we give deference to the plan ad-ministrator's interpretation is especially applicable when plan language is ambiguous, for that is precisely when the admin-istrator exercises his grant of discretion." *Hess v. Reg-Ellen Mach. Tool. Corp.*, 423 F.3d 653, 662 (7th Cir. 2005); *see also Ross v. Indiana State Teacher's Ass'n Ins. Tr.*, 159 F.3d 1001, 1011 (7th Cir. 1998) (holding as reasonable a board's decision about how to fill the plan's silence on an issue). In this case, Section

6.4(a)(iii) could be clearer. But the Administrative Committee's view that the ten-year annuity is not payable before a pension commences is reasonable, "compatible with the language and the structure of the plan document," and entitled to our deference. *Schane v. Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund Pension Plan*, 760 F.3d 585, 590 (7th Cir. 2014). Kishunda's hypothetical, about a labor contract with "continuing" payments, fails to convince us otherwise. It does not account for the full ambiguity of Section 6.4(a)(iii), the discretion vested in the administrator, or the broader structure of the Plan.

Kishunda's reliance on *O'Shea v. UPS Ret. Plan*, 837 F.3d 67 (1st Cir. 2016), also falls short. *O'Shea* presented facts similar to this case—a parent-participant died before the start of his pension, and a plan administrator denied the children-beneficiaries' claim, concluding that only spouses could receive benefits when a participant dies before his pension starts. 837 F.3d at 70–72. Yet in *O'Shea*, unlike in this case, the annuity provision included express language providing for payments to a designated beneficiary when the participant "dies after the Annuity Starting Date." *Id.* at 75. The First Circuit concluded that, in light of that language, the administrator had not acted arbitrarily or capriciously. *Id.* It noted, though, that without the express language, the clause would have suggested that the annuity was payable to the children-beneficiaries. *Id.*

*O'Shea*'s dictum does not persuade us that Section 6.4(a)(iii) requires payment to Kishunda. *O'Shea* did not address a provision comparable to Section 6.9, which defines designated beneficiaries as spouses when the participant dies

before distribution. Nor did *O'Shea* involve an annuity provision that was ambiguous as to whether benefits were payable if the participant dies before the pension commenced. Our inquiry is not whether the Plan could have been better drafted, but whether the Committee's interpretation has rational support. *See, e.g.*, *Geiger*, 845 F.3d at 362. For reasons already explained, we conclude that it does.

## IV. Conclusion

We echo the district court—the facts of this case are undoubtedly unfortunate. The Administrative Committee's decision, however, was not arbitrary or capricious. We therefore AFFIRM.