In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 19-2626

DONALD BATOR, et al.,

*Plaintiffs-Appellants,*

*v.*

DISTRICT COUNCIL 4, GRAPHIC COMMUNICATIONS CONFERENCE, IBT, et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cv-1770 — **John J. Tharp, Jr.**, *Judge.*

_____

ARGUED FEBRUARY 12, 2020 — DECIDED AUGUST 27, 2020

_____

Before BAUER, KANNE, and BARRETT, *Circuit Judges.*

KANNE, *Circuit Judge.* Plaintiffs Donald Bator, Edmond W. Moses, Christopher O'Malley, Michael Anthony Pappa, and Rogelio Jimenez, Jr. are former members of a union, Local 458-

M.[1] The Union participated in an employee-benefit pension plan administered by a Board of Trustees. In 2014, the Plaintiffs discovered the financial health of their pension plan was deteriorating. Several years later, the Plaintiffs sued the Trustees and the Union under the Employee Retirement Income Security Act of 1974 ("ERISA") for a breach of fiduciary duty. *See* 29 U.S.C. § 1132(a)(2). The Plaintiffs allege the Defendants' actions and inaction resulted in an underfunding of their pensions. The district court dismissed the case for failure to state a claim under ERISA. We affirm.

## I. BACKGROUND

The Plaintiffs are current employees of Bell Litho Inc., a graphic-communications company, and former members of Local 458-M Graphic Communications International Union. The Plaintiffs participated in an employee-funded benefit plan: the Inter-Local Pension Fund of the Graphic Communications Conference of the International Brotherhood of Teamsters. Unlike many defined-benefit plans, this pension plan is completely funded by contributions from the members of about sixty-nine unions; their employers do not contribute to or participate in the plan's governance. Instead, the plan is governed by Trust Indenture documents and administered by a Board of Trustees.[2]

The Trust Indenture documents provide that the plan's members must contribute a fixed amount to the plan each

---

[1] In this opinion, we refer collectively to the Plaintiffs "District Council 4, GCC/IBT" and "Local 458-M, GCC/IBT" as "the Union" or "Local 458-M."

[2] Trustees are chosen by participating local unions. A member of Local 458-M sits on the Board.

week, unless a member's union has set a different contribution amount (we'll have more to say about this later). In 2008, the Plaintiffs' union, 458-M, voted to increase its members' contributions to the plan from 6% to 8% of their weekly wages.

Several years later, in January 2014, the Trustees notified plan participants that the plan's financial health was deteriorating. So, the Plaintiffs and others petitioned Local 458-M to reduce their compelled-contribution rate. The Union denied that request.

In 2016, the collective-bargaining contract in place between Bell Litho and Local 458-M expired. During contract re-negotiations, the Plaintiffs again requested that the Union reduce their required contribution rate. The Union again refused and warned them that failure to contribute to the plan could result in expulsion from the Union.

In the back-and-forth between the Union and the Plaintiffs, it came to light that other members of Local 458-M (who worked for a different employer, Aurora Fast Print) were either contributing to the pension plan at lower rates than Bell Litho employees or not contributing at all. The Union explained that these non-contributing members were originally part of a different union that did not participate in the plan; when that union merged with Local 458-M, those members were allowed to participate in the plan under different conditions than the Plaintiffs.

Contract re-negotiations between Bell Litho and the Union were ultimately unsuccessful. In November 2016, the Union notified all Bell Litho employees that they would no longer be governed by the Union's collective-bargaining agreements,

and their contributions to the plan would become vested. As a result, the Plaintiffs lost certain retirement benefits—including early withdrawal at age 59, a disability benefit, and a death benefit—available only to active contributors to the plan.

The Plaintiffs sued the Trustees and the Union for a breach of their fiduciary duties to the plan. Specifically, the Plaintiffs believe the Trustees breached their fiduciary duties by not enforcing the terms of the Trust Indenture regarding contributions when they allowed certain members of Local 458-M to contribute to the fund at lower rates. *See* 29 U.S.C. § 1104(a)(1)(D) (Fiduciaries of a pension plan must discharge their duties "in accordance with the documents and instruments governing the plan."). As for the Union, the Plaintiffs contend the Union breached its fiduciary duties under ERISA by failing to enforce its by-laws, which they claim would have required all members to contribute equally to the fund.

The district court dismissed Plaintiffs' claims for failing to allege a plausible claim. Fed. R. Civ. P. 12(b)(6). First, the court concluded that the Trustees' action—interpretation of the Trust Indenture—did not amount to a breach of fiduciary duty. Second, the court determined that the Plaintiffs' factual allegations about the Union's actions did not support a claim that the Union acted as a fiduciary. As a result, the court concluded the Plaintiffs failed to allege plausible allegations amounting to a violation of ERISA's fiduciary-liability provisions.

## II. ANALYSIS

We review the district court's dismissal for failure to state a claim *de novo*, *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81

(7th Cir. 2016), accepting all well-pleaded factual allegations as true and drawing permissible inferences in the Plaintiffs' favor. *Id.* We first address the Plaintiffs' claims against the Trustees then turn to their claims against the Union.

*A. The Trustees*

The Plaintiffs claim the Trustees breached their fiduciary duties when they failed to enforce particular terms of the Trust Indenture related to member contributions. When confronted with a claim involving the interpretation of a pension plan, we must first resolve an antecedent question: how broad is the Trustees' discretion to interpret the terms of the Trust Indenture? The Trustees contend the Trust Indenture confers broad discretion on the Trustees to interpret its terms. We agree.

An ERISA plan can specify that the administrator has broad discretion to interpret or apply it. *See Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 818 (7th Cir. 2010). That scope of discretion, in turn, drives our standard of review: arbitrary and capricious review attaches to a broad grant of interpretive discretion. *Lacko v. United of Omaha Life Ins. Co.*, 926 F.3d 432, 439 (7th Cir. 2019). Otherwise, our review is plenary. *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 637 (7th Cir. 2005).

In determining the extent to which a pension plan grants a trustee discretion to construe its terms, "we review the language of the plan *de novo* as we would review the language of any contract." *Id.* Here, the applicable language of the Trust Indenture says:

> The Trustees shall have the discretionary authority
> to construe the terms of this Trust Indenture and the

> governing documents of merged plans described in
> Article VII, and to determine eligibility for member-
> ship, eligibility for benefits and all other rights, ben-
> efits, privileges and obligations of membership un-
> der those documents. … The interpretation by the
> Trustees of these documents or any provision
> thereof shall be final and conclusive, and the deter-
> minations of the Trustees shall be binding upon all
> members and their beneficiaries and upon all appli-
> cants for membership.

We've previously concluded that language nearly identi-cal to this excerpted language conferred a plan administrator with broad interpretive discretion. *Cf. Johnson v. Allsteel, Inc.*, 259 F.3d 885, 890 (7th Cir. 2001); *Exbom v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 900 F.2d 1138, 1141 (7th Cir. 1990). In *Exbom*, the language in the trust agreement gave "the Trustees power to construe the provisions of the Agreement and the Plan," and stated that the Trustees' interpretation of those documents "shall be binding." 900 F.2d at 1141.

Likewise, in *Johnson*, we considered plan language that a trustee "shall have discretionary authority to interpret and construe this Plan and to determine all questions arising un-der this Plan, including questions regarding eligibility, vest-ing and entitlement to benefits under the Plan." 259 F.3d at 887. We concluded this language was "sufficient to trigger deferential review" of the administrator's interpretation of the plan. *Id.* at 890.

So too here. The Trust Indenture unambiguously states that the Trustees have discretion to interpret its terms by spec-ifying the Trustees "shall have the discretionary authority to construe the terms" and "determine eligibility for … member-ship" or "benefits." And as in *Exbom*, that determination

"shall be binding." Accordingly, we defer to the Trustees' interpretation of the plan's governing instruments unless arbitrary and capricious. *See Lacko*, 926 F.3d at 439.

The Trustees' interpretation "is not arbitrary and capricious if it falls within the range of reasonable interpretations," *Green v. UPS Health & Welfare Package for Retired Emps.*, 595 F.3d 734, 738 (7th Cir. 2010), or if it is "compatible with the language and the structure of the plan document," *Estate of Jones v. Children's Hosp. & Health Sys. Inc. Pension Plan*, 892 F.3d 919, 926 (7th Cir. 2018). But if the Trustees "def[y]" the "plan's plain language," that decision is arbitrary and capricious. *Id.* at 923. We turn, then, to interpreting the plan's terms.

The Plaintiffs seek to hold the Trustees liable for a breach of fiduciary duty. *See* 29 U.S.C. §§ 1109, 1132(a)(2) . To state a claim for such a breach, the Plaintiffs must plead that: "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (quoting *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010)). The only contested element is whether the Trustees breached their fiduciary duty. Fiduciaries of a pension plan must discharge their duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). The relevant governing document here is the Trust Indenture.

The Plaintiffs first contend that the Trustees breached their fiduciary duties by failing to enforce the terms of the Trust Indenture. They believe the language of the trust requires the Trustees to enforce uniform contribution rates among all participating members of a local union. The Trustees, however, believe the Trust Indenture permits different groups within

the same union to contribute at different rates. Two portions of the Trust Indenture are relevant to resolving this dispute: one defining membership and one defining contributions. The Trust Indenture defines local membership as follows:

> Subject to such conditions as the Trustees may establish, a Local may be a Participating Local with respect to *one or more segments of its membership, or under separate conditions with respect to each of one or more such segments*, defined in terms of recognized industries including all occupations relating directly or indirectly to the industry or industries with respect to which the Local union became a Participating Local, as determined and approved by the Trustees.

Contributions to the plan are discussed in Article IV, which provides, in relevant part, that

> *any group of participating members in a Participating Local* may, by official action of its membership, and upon prior approval of the Trustees of the Inter-Local Pension Fund, determine that the contributions of its members shall be greater than [the required $5.00 per week], providing that the formula for such greater contribution shall apply to *all participating members of the Local*.

We'll start with the excerpted-contribution section. As a reminder, in 2008, Local 458-M voted to increase its members contributions to the plan from 6% to 8% of their weekly wages. But the Plaintiffs eventually discovered that other members within Local 458-M, who worked for a different employer, were either contributing to the pension plan at lower percentages than Plaintiffs or not contributing at all. This meant that members of Local 458-M were not contributing to the plan at equal rates, which the Plaintiffs believe violates the

Trust Indenture's terms that contribution rates "shall apply to all participating members of the Local."

One plausible reading of the contributions paragraph, standing alone, suggests that when a group of members within a local union increases its contribution level, that contribution rate must apply to *all* participating members of that union regardless of whether they belong to the specific group that initiated the change.

But the contributions section cannot be read in isolation from the remainder of the Trust Indenture. Instead, the Trustees urge us to read the contribution section of the Trust Indenture in conjunction with the membership section, which permits different industry "segments" within a local union to become fund participants under "separate conditions." When read in conjunction, one could reasonably interpret the terms governing contributions to mean that different *segments* of a participating local union can increase their contribution levels so long as the formula applies to all members of *that segment*.

Although the Trustee's interpretation is not the only plausible interpretation of the Trust Indenture, we think the Trustee's interpretation falls comfortably within the range of reasonable interpretations of the Trust Indenture and is "compatible with the language and the structure" of that document. *Estate of Jones*, 892 F.3d at 926. And in the face of two reasonable interpretations of the Trust Indenture, we defer to the Trustees' interpretation. *See Johnson*, 259 F.3d at 889–90 (discussing *Morton v. Smith*, 91 F.3d 867, 872 (7th Cir. 1996), and stating, "We noted that the trustees had several interpretations to choose from, Morton's interpretation being only one, and that because we were engaging in deferential review

we had to respect their choice to adopt a different interpretation.").

The terms of the Trust Indenture can be reasonably interpreted as permitting different segments within a union to contribute to the plan at different levels. So the Trustees cannot have breached their fiduciary duties by failing to require different segments within Local 458-M to contribute at the same rate. To the contrary, the Trustees discharged their duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). We affirm the district court's dismissal of this claim.

*B. The Union*

The Plaintiffs also contend the Union breached its fiduciary duty by failing to properly fund the plan through selective enforcement of its members' contribution levels to the plan. The plan was underfunded, the Plaintiffs allege, because the Union inconsistently enforced its by-laws, which require all Local 458-M members to contribute to the plan at equal rates. In order to state a claim for breach of fiduciary duty, however, the Plaintiffs must show that the Union—in taking the actions alleged in the complaint—functioned as a fiduciary of the plan. *Allen*, 835 F.3d at 678. They cannot do so.

To be considered a fiduciary under ERISA, the Union must: exercise discretionary authority or control over plan administration or management, exercise authority or control over management or disposition of the plan's assets, dispense investment advice, or make benefit determinations. 29 U.S.C. § 1002(21)(A); *Brooks v. Pactiv Corp.*, 729 F.3d 758, 765–66 (7th Cir. 2013). The fiduciary inquiry under § 1002(21)(A) is a functional one: we look at whether the Union was "performing a

fiduciary function when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (internal punctuation omitted).

ERISA's fiduciary standards distinguish between "fiduciary functions," described above, and "settlor" functions. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). When a Union is performing a settlor function it is not acting as a fiduciary. *Beck v. PACE Int'l Union*, 551 U.S. 96 (2007).

Decisions about the "payout detail of the plan" or "the content of a plan are not themselves fiduciary acts," *Pegram*, 530 U.S. at 226; nor are decisions regarding "the form or structure of the Plan." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999). Likewise, where an employer or union "select[s] levels of funding" and "decide[s] who receives pension benefits and in what amounts," they are acting in a settlor capacity, not as a fiduciary. *Johnson v. Georgia-Pac. Corp.*, 19 F.3d 1184, 1188 (7th Cir. 1994).

The Plaintiffs contend the Union acted as a fiduciary when it inconsistently enforced its by-laws, which had the effect of limiting the amount of contributions owed to the fund. The Plaintiffs allege in their complaint that the Union's "control over the amount of revenue that is, or is not, contributed" to the plan is the pertinent fiduciary act. The Plaintiffs analogize this function with management of plan assets (a fiduciary function) because the Union has the ability to limit the amount of revenue paid to the plan and therefore the sum of the assets the plan can invest.[3]

---

[3] We note that Plaintiffs cited only one case in their brief to support this assertion, *IT Corp. v. General American Life Insurance Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997). That case does not support (or even discuss) the

But our case in *Johnson v. Georgia-Pac. Corp.* says otherwise. When a union sets, changes, or enforces contribution rates, the union acts as a settlor because it is "select[ing] levels of funding" to the plan by setting the contribution rates. 19 F.3d at 1188. So, even though we accept as true the Plaintiffs' allegation that the Union controls the amount of revenue that is coming into the plan, this allegation is not sufficient under our cases to state a claim that the Union acted as fiduciary. Instead, it demonstrates the Union acted as a settlor. And an entity that is not acting as a fiduciary cannot be held liable for a duty that belongs only to a fiduciary. We affirm the district court's dismissal of this claim.

The Plaintiffs additionally argue that the Union acted as a fiduciary when it disclaimed interest in representing the Plaintiffs' bargaining unit. Recall, that in November 2016, Local 458-M sent a letter to employees at Bell Litho, advising these employees that "the Union hereby disclaims interest in the two Local 458-M bargaining units at Bell Litho." This disclaimed interest had the effect of vesting the Plaintiffs' contributions to the fund. But the Plaintiffs cite to no cases to support their conclusory assertion that this action is one of a fiduciary. Arguments raised in the district court are still "waived on appeal if they are underdeveloped, conclusory, or unsupported by law." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). We decline to address the merits of this conclusory and unsupported argument.

We AFFIRM the judgment of the district court.

---

proposition that setting or enforcing contribution rates amounts to a fiduciary function. The Plaintiffs did not respond to or attempt to distinguish our case in *Johnson*.