In the

# United States Court of Appeals
## for the Seventh Circuit

No. 20-1259

HARLAN TEN PAS,

*Plaintiff-Appellee,*

*v.*

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18 C 3694 — **Sara L. Ellis**, *Judge.*

ARGUED DECEMBER 1, 2020 — DECIDED APRIL 11, 2022

Before SYKES, *Chief Judge*, and BRENNAN and SCUDDER,
*Circuit Judges.*

SYKES, *Chief Judge.* Harlan Ten Pas worked as a tax part-
ner at the accounting firm McGladrey LLP until he suffered
a cluster of cardiovascular events in 2014.[1] He receives total-

---

[1] McGladrey has since changed its name to "RSM US LLP." We will refer
to the firm as "McGladrey."

disability benefits under McGladrey's group long-term disability insurance policy, which The Lincoln National Life Insurance Company administers.

Ten Pas contends that he is entitled to a larger monthly benefit under the terms of the policy, so he filed suit against Lincoln National under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). The policy calculates benefits based on a percentage of an employee's salary on his "Determination Date"—"the last day worked just prior to the date the Disability begins." Lincoln National used Ten Pas's salary as of August 31, 2014, the date of his heart attack and the first of several consecutive hospital stays. Ten Pas argues that his determination date came on or after September 1. The short difference matters because Ten Pas received a substantial raise from McGladrey on that date. The district judge agreed with Ten Pas and entered summary judgment in his favor.

We reverse. Lincoln National's benefits determination cannot be disturbed unless Ten Pas can show that it was arbitrary or capricious. *See Hennen v. Metro. Life Ins. Co.*, 904 F.3d 532, 539 (7th Cir. 2018). He has not met this demanding standard. Because Lincoln National's decision rests on a reasonable construction of the contract and an evaluation of Ten Pas's medical records, the company is entitled to summary judgment.

## I. Background

The events underlying Ten Pas's disability claim began over Labor Day weekend in 2014. After working a half day at McGladrey's Chicago office on Sunday, August 31, Ten Pas traveled to his lake home in Wisconsin. Shortly after arriving, he was rushed to the emergency room of a local hospital

after experiencing chest pains and shortness of breath. Doctors determined that he had suffered a heart attack and admitted him to the intensive-care unit.

The next day (Labor Day) Ten Pas underwent an angioplasty and doctors implanted a stent. He remained in the hospital for a second night. As he later explained in an affidavit, he reviewed and drafted a handful of emails to clients and coworkers while recuperating that evening. For instance, in one email Ten Pas informed several colleagues of his medical condition and instructed them to "[k]eep the ship upright for a day or two."

Ten Pas left the hospital on Tuesday, September 2, and returned home to the Chicago area. But he was not out of the hospital for long. After briefly returning to the office for a time on Wednesday, Ten Pas left after feeling unwell and was admitted to the hospital that evening and diagnosed with an ischemic stroke. He remained hospitalized for two nights. As with his first hospital stay, he reviewed and sent some emails while recuperating. Ten Pas returned home on Friday, September 5, but was rushed to the hospital the next day after suffering a serious complication known as a hemorrhagic conversion of infarct—bleeding on the brain secondary to the ischemic stroke. He has not worked for McGladrey in any meaningful capacity since. He remained in the hospital for another week and then was transferred to the Rehabilitation Institute of Chicago for a lengthy period of inpatient rehabilitation therapy. He was discharged to his home on October 24.

In January 2015 McGladrey submitted a total-disability claim to Lincoln National on Ten Pas's behalf. There were several layers to Lincoln National's benefits determination,

but we need only detail the process by which it determined the amount of Ten Pas's monthly benefit. Ten Pas is a "Class 1 Insured Employee" under the policy, so the amount is set at 60% of his "Basic Monthly Earnings" on his "determination date." As mentioned, a claimant's determination date is defined as "the last day worked just prior to the date the Disability begins." Because Ten Pas received a raise of several thousand dollars per month on September 1, 2014, a determination date on or after that date would result in a significantly larger monthly benefit.

McGladrey's initial submission listed September 5 as Ten Pas's last day of work. But some statements from his treating physicians prompted further investigation, with one doctor indicating that he was unable to work as early as August 31. In the months that followed, Lincoln National worked to resolve the discrepancy and sought to pin down a timeline of when Ten Pas last worked and became disabled. To that end, Lincoln National requested documentation from McGladrey on Ten Pas's work during the first week of September. McGladrey could not produce any, though it noted anecdotally that Ten Pas was physically in the office on September 3 and worked remotely for the rest of that week. Still, Lincoln National remained skeptical that Ten Pas's determination date fell in September because he had not worked a full day after his August 31 heart attack.

As part of its investigation, Lincoln National also gathered information from McGladrey on the scope of Ten Pas's job responsibilities as a "Lead Tax Partner." This was important because the plan defines the terms "Total Disability" and "Totally Disabled" as follows: "due to an Injury or Sickness[,] the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation."

McGladrey explained that Ten Pas's job required, among other things, that he supervise other tax accountants, review tax returns and research memoranda, and win new business by pitching work to prospective clients.

After completing its investigation, Lincoln National notified Ten Pas that it would use his pre-raise basic monthly earnings as of August 31, 2014, to calculate his monthly benefit. Acknowledging Ten Pas's limited work during and immediately after his first hospital stay, Lincoln National emphasized that Ten Pas was "inpatient for some portion of every day that week." And because of his hospitalization, Lincoln National explained that Ten Pas was "not able to perform the full duties of [his] occupation" after his heart attack on August 31.

In November 2015 Ten Pas filed an administrative appeal with Lincoln National. He disputed Lincoln National's finding that he was unable to work after August 31 and submitted additional evidence to shore up his position. His primary argument, however, was that his determination date could not have been earlier than September 1 because he was still "Actively at Work" as defined by the policy.

The terms "Active Work" and "Actively at Work" are defined by the policy as an employee's "full-time performance of all Main Duties of his or her Own Occupation, for the regularly scheduled number of hours." The definition adds a qualifier that takes certain out-of-office time into account. In pertinent part, the definition provides: "Unless disabled on the prior workday or on the day of absence, an Employee will be considered Actively at Work on … a Saturday, Sunday or holiday that is not a scheduled workday … ." Importantly, however, the terms "active work" and "actively

at work" appear only in the policy provisions pertaining to eligibility for coverage—i.e., the date on which an employee's coverage first becomes effective and the requirements for continuation of coverage during interruptions in service. The terms do not appear in the policy provisions governing the determination of the amount of a claimant's benefits.

Even so, Ten Pas seized on the qualifier because August 31 fell on a Sunday and September 1 was a holiday. He argued that because he was "actively at work" (as the policy defines that term) throughout Labor Day weekend, he could not have been disabled until the next business day—September 2—at the earliest.

Lincoln National rejected Ten Pas's administrative appeal and upheld its decision to use the August 31 salary to calculate his benefit. It reiterated that although Ten Pas may have performed some limited work during his hospital stays, he did not "return to full-time performance of all main duties of his own occupation[] for the regularly scheduled number of hours." And it rejected Ten Pas's theory about the applicability of the "active work" definition, finding instead that "he was disabled as of 08/31/2014."

Ten Pas sought a second-level appeal on the same grounds in May 2016. Lincoln National again affirmed its initial determination, essentially echoing the reasoning from the first-level appeal but adding an acknowledgment that Ten Pas was actively at work until his August 31 heart attack.

Having exhausted the administrative-appeal process, Ten Pas filed suit under § 1132(a)(1)(B) of ERISA seeking a declaratory judgment that Lincoln National erred by using his August 31 salary for his benefits determination. As in his

administrative appeals, Ten Pas argued that (1) he was not disabled on August 31 because he continued to work during the first week of September; and (2) even if his post-August 31 work did not suffice, he remained actively at work as defined in the policy until at least September 2.

The case was submitted on cross-motions for summary judgment, with Ten Pas limiting his motion to the argument about the active-work definition. The judge endorsed that theory and held that Lincoln National unreasonably used his pre-raise basic monthly earnings to calculate his benefit. She thought that the definition of "active work" was relevant to identifying the date on which Ten Pas's disability began for purposes of the benefits determination. In other words, she concluded that the phrase "last day worked" in the definition of "determination date" must be read in conjunction with the active-work definition. Based on that interpretation of the policy, the judge concluded that because Ten Pas was considered to be "actively at work" (as the policy defines that term) through Labor Day weekend, he could not have become disabled until September 2. Accordingly, the judge found that Ten Pas's "last day worked"—and thus his determination date—came no earlier than September 1. She granted his motion, denied Lincoln National's, and entered judgment for Ten Pas.

## II. Discussion

We review the judge's summary-judgment order de novo. *Lacko v. United of Omaha Life Ins. Co.*, 926 F.3d 432, 439 (7th Cir. 2019). Where, as here, the case was resolved on cross-motions for summary judgment, "our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration [was]

made." *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005) (quotation marks omitted).

Though we review the judge's ruling without deference, the same is not true of the underlying benefits determination. When an employee-benefits plan "grants to the administrator the discretionary authority to determine benefits, we review the decision of that administrator under the more stringent arbitrary and capricious standard." *Lacko*, 926 F.3d at 439. The plan at issue here clearly grants discretionary authority to the claim administrator, triggering deferential review. *Dragus v. Reliance Standard Life Ins. Co.*, 882 F.3d 667, 672 (7th Cir. 2018) (explaining that the arbitrary-and-capricious standard applies only when the plan language clearly and unequivocally grants discretionary authority to the plan administrator). Accordingly, we cannot disturb Lincoln National's benefits determination unless it flunks arbitrary-and-capricious review.[2]

That creates a high hurdle for Ten Pas. A plan administrator's decision survives arbitrary-and-capricious review if

> (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision

---

[2] Despite the policy's language, Ten Pas maintains that we should instead review Lincoln National's decision de novo because Lincoln National failed to meet the deadline requirements for his first administrative appeal and because Lincoln National's obligation to pay benefits creates a conflict of interest for determining what those benefits should be. Ten Pas has waived these arguments, however, because he failed to raise them in the district court. *See Allen v. City of Chicago*, 865 F.3d 936, 943 (7th Cir. 2017).

on a consideration of the relevant factors that encompass the important aspects of the problem.

*Estate of Jones v. Child.'s Hosp. & Health Sys. Inc. Pension Plan*, 892 F.3d 919, 923 (7th Cir. 2018) (quotation marks omitted).

This deference likewise extends to matters of contract interpretation. Where policy terms are ambiguous, we may not "set aside a denial of benefits based on any reasonable interpretation of the plan," even if we would be inclined to reach a different result on plenary review. *Hess*, 423 F.3d at 658. Put differently, we defer to an administrator's construction "if it falls within the range of reasonable interpretations" or if it is "compatible with the language and the structure of the plan document." *Bator v. Dist. Council 4*, 972 F.3d 924, 929 (7th Cir. 2020) (quotation marks omitted). That's not to say this deference is simply a rubber stamp; if the administrator's construction "defies [the] plan's plain language" or is otherwise patently unreasonable, its decision has "fail[ed] the arbitrary-and-capricious standard." *Jones*, 892 F.3d at 923.

This dispute largely involves an interpretive question under the policy: Did Ten Pas's determination date come at the end of August or in the first week of September? The judge concluded that it was arbitrary and capricious for Lincoln National to choose the former. That was error. To explain why, we'll unpack the terms that are—and just as importantly, are not—relevant to the determination-date decision.

## A. The Active-Work Definition Is Not Relevant

As explained, the determination date is "the last day worked just prior to the date the Disability begins." By its

terms just two factors are relevant: the date Ten Pas's disability began and "the last day worked just prior" to that date. Rather than zeroing in on these two variables, the judge injected a third—the "active work" definition—into the equation. Ten Pas insists that the judge's reading of the policy was sound when the determination-date provision is read in the context of the entire agreement.

The active-work definition is a red herring. It's true that the relevant policy provisions must be situated in their proper context rather than read in isolation. *See id.* ("Plan language is … given its plain and ordinary meaning, and the plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement." (quotation marks omitted)). But context makes clear that the policy's definition of "active work" does not carry the weight that Ten Pas says it does. The active-work provision appears in an upfront section that defines a list of terms "[a]s [they are] used throughout the [p]olicy." But the term "active work" is not "used" anywhere in the definition of "determination date" or in any other provision that bears on the benefits amount. Frankly, the only connection between the active-work and determination-date provisions is their proximity in a set of definitions listed in alphabetical order.

More to the point, the term "active work" is "used" only in the policy provisions that govern a matter not in dispute: Ten Pas's eligibility for coverage. For example, the "Effective Date" provision, which sets forth when an "Employee's initial amount of coverage becomes effective," lists "the date the Employee resumes Active Work, if not Actively at Work on the day he or she becomes eligible," as one of four possible triggers for when an employee's initial coverage begins.

On the other side of the ledger, "[c]easing Active Work" renders an employee ineligible for insurance, though coverage may continue if the employee is "absent due to Total Disability." These provisions pertain to *eligibility for* and *continuation of* coverage. They have no effect on the determination of the amount of the benefit Ten Pas is entitled to receive.

Simply put, we see no role for the active-work definition in either of the constituent parts of the determination-date definition. Ten Pas's argument to the contrary simply misreads the policy. Or at the very least, Lincoln National reasonably rejected his argument, which at best was based on a strained reading of the policy.

### B. Lincoln National Reasonably Identified Ten Pas's Determination Date

Because the active-work provision is irrelevant, resolution of this case is straightforward. Lincoln National reasonably settled on a determination date.

As noted, the policy terms "Total Disability" and "Totally Disabled" mean that "due to an Injury or Sickness[,] the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation." We see no reason to second-guess Lincoln National's finding that Ten Pas was totally disabled as of his heart attack and first hospitalization on August 31. It's true that Ten Pas continued to perform a limited amount of work up until his September 6 hemorrhagic conversion, but this consisted mostly of reviewing and sending a small amount of email correspondence from his hospital bed. He has not shown, either as an interpretive or evidentiary matter, that it was unreasonable for Lincoln

National to conclude that he did not perform the full duties of his occupation.

And because Ten Pas's disability began on August 31, his "last day worked just prior" to August 31 could not have been September 1 or later. To be sure, Lincoln National has been somewhat inconsistent on the date that Ten Pas last worked, at times wavering between his last full day in the office on August 29 on the one hand and either of his partial days on August 30 or 31 on the other. But the critical point is that "the last day worked just *prior to* the date the Disability begins" cannot be plausibly understood to be forward-looking.

Accordingly, it was not arbitrary or capricious for Lincoln National to reject Ten Pas's argument that his September 1 raise must be included in its benefits calculation. Seeing no other basis to displace the administrator's determination, we reverse and remand with instructions to enter judgment for Lincoln National. *See State Auto Prop. & Cas. Ins. Co. v. Brumit Servs., Inc.*, 877 F.3d 355, 357 (7th Cir. 2017) ("Where facts are not disputed, if a district court grants one party's motion for summary judgment and denies the other party's cross-motion, this court can reverse and award summary judgment to the losing party below." (quotation marks omitted)).

REVERSED AND REMANDED WITH INSTRUCTIONS